765 P.2d 559

**Juan F. MUNGUIA, Appellant,**

v.

**DEPARTMENT OF ECONOMIC SECURITY, an agency,**

**and**

**Mallin Bros. Iron & Metal Co., Inc., Appellees.**

**No. 1 CA–UB 567.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 3, 1988.

Reconsideration Denied Dec. 20, 1988.

Community Legal Services by H. Leslie Hall, Phoenix, for appellant.

Robert K. Corbin, Atty. Gen. by Frank J. Sagarino, Asst. Atty. Gen., Phoenix, for appellee Arizona Dept. of Economic Sec.

## OPINION

CORCORAN, Judge.

Appellant Juan F. Munguia (claimant) appeals from a decision of the Unemployment Insurance Appeals Board (appeals board) of the Arizona Department of Economic Security (DES) affirming an administrative decision that he voluntarily quit his employment without good cause, thus disqualifying himself from unemployment benefits pursuant to A.R.S. § 23–775(1).[1]  The appeals board adopted the department's legal conclusion that the changes in claimant's job duties were not so substantial that the transfer would constitute an "offer of new work," which claimant could have refused without disqualifying himself, pursuant to Arizona Administrative Code (A.A.C.) R6–3–50315.[2]  The appeals board also concluded that claimant voluntarily left his job because he was refused a pay increase, thus disqualifying himself from benefits pursuant to A.A.C. R6–3–50500(D).[3]  The issue on appeal is whether these determinations were supported by substantial evidence and whether the appeals board applied correct legal conclusions.

Claimant sought review in this court because he contends that the applicable administrative regulations were applied too narrowly and because the legal issue of what constitutes "an offer of new work" has not been addressed by Arizona case law.

### 1. *Standard of Review*

On appeal, this court is bound by the appeals board's findings of fact unless they

---

**1.** A.R.S. § 23–775(1) provides:

An individual shall be disqualified for benefits:

1.  For the week in which he has left work voluntarily without good cause in connection with the employment, and in addition to the waiting week, for the duration of his unemployment and until he has earned wages in an amount equivalent to five times his weekly benefit amount otherwise payable.

**2.** A.A.C. R6–3–50315 provides:

*New Work*

When an employee resigns rather than accepts conditions of employment which are different from those under which he has been working, a decision must be made as to whether he has left work voluntarily or has refused an offer of new work.

1.  If the changes in working conditions are not substantial, a voluntary leaving is found.

2.  If the changes in working conditions are so substantial as to constitute a new job (i.e., they are not expressly or impliedly authorized in the original employment relationship); the separation shall be regarded as a "discharge" and a refusal of a new offer of work.  In such cases the failure to accept work shall be held to have occurred on the first workday following the last day of work.

3.  If it is determined that the worker separated due to a layoff and refused an offer of new work, the employer is an interested party to the refusal of work determination since the refusal issue arises from the separation.

**3.** A.A.C. R6–3–50500(D) provides:

D.  Increase refused.  A worker who quits solely because his employer has refused to grant him a pay increase leaves work voluntarily without good cause in connection with his employment; unless:

a.  He has been assigned more responsible duties normally carrying a higher rate of pay for longer than a temporary short period of time;  and

b.  He attempted to adjust his grievance before leaving.

are arbitrary, capricious, or an abuse of discretion. *Thompson v. DES*, 127 Ariz. 293, 294, 619 P.2d 1070, 1071 (App.1980). If the decision is supported by substantial evidence, this court will affirm. *Anamax Mining Co. v. DES*, 147 Ariz. 482, 485, 711 P.2d 621, 624 (App.1985). However, legal conclusions of the appeals board are not binding on this court; we are free to draw our own legal conclusions in determining if the appeals board properly interpreted the law. *Prebula v. DES*, 138 Ariz. 26, 30, 672 P.2d 978, 982 (App.1983).

In this case, the issue involves the application of legal principles to largely undisputed facts.

## 2. *Factual Background*

Before he left his employment on January 5, 1987, claimant had worked for 2½ years as a torch cutter at Mallin Bros. Iron & Metal Co. (employer). His duties consisted solely of cutting metal pieces in an open outdoor area called the yard. Approximately 3 months before claimant left, employer purchased an iron-cutting machine that performed in one day the iron cutting claimant could do in a month.

A foreman informed claimant on his last day of work that he was being transferred to another work area called the foundry, where his duties would include some iron cutting as well as several new functions, for which he would be trained. The parties agree that claimant's job transfer required him to assume the following new duties:

1. operating an overhead crane to load and unload metal castings;
2. sandblasting, during which claimant would have to wear a respirator;
3. welding, with which claimant had no previous experience;
4. grinding, which involved picking up casted parts with the overhead crane, setting them up on a conveyor, and using a grinding wheel to grind them;
5. quenching, which involved inserting heated metal castings into a pit of water to cool them, during which claimant would be required to wear a hard hat with face shield and heat-resistant clothing.

Claimant told the foreman that he did not know how to do these new duties. He testified that he had previously injured his leg while attempting to operate the crane. He also indicated to his foreman his dissatisfaction at assuming additional job duties at the same hourly rate he had been paid for cutting metal. After this conversation, claimant punched out his time card 3 hours before his shift ended and left work.

## 3. *Procedural History*

On January 5, 1987, claimant filed an application for unemployment benefits in which he stated in Spanish, as interpreted by a court interpreter:

> [I]t's slow and they sent me to another job that I have never done before. That means I worked in the yard and they want to change from that job to the [foundry]. And the boss said that if I didn't want to do everything, all the work, if not, to go out.

.  .  .  .  .

On a claim form for benefits, he stated,

> I quit my job because: the boss was trying to have me do another job I did not apply for. I work in the yard and he (boss) tried to have me moved to foundry and that job is not the same [as] I do. Without even informing me, he wanted me to move.

The deputy investigator included the following notes in the record after his telephone interview about the incident with employer's representative:

> Call returned by Linda Pruitt ... Both Mr. and Mrs. Smith advise that the worker was [transferred] to the foundry but that his work would have been the same and the rate of pay the same ... would not be required to weld as no experience in that. Was under much closer supervision in that area ... worked 2 or 3 days and then punched out at noon 1/5/87 and left w/o notice to supervisor ...

On January 28, 1987, the deputy issued a determination denying claimant unemployment benefits after finding that claimant "voluntarily left employment" pursuant to

§ 23–775(1). The "basis for determination" stated as follows:

> You quit your position by punching out at Noon and leaving the facility without notice to your supervisor. You were dissatisfied in having been transferred to another work area and felt that you would be required to perform work that you had no experience for and/or training to perform. The work would have been the same and the rate of pay would have remained the same. It has not been shown that you were compelled to leave.

Claimant pursued his claim to the appeals tribunal, which set the matter for hearing on February 18, 1987. At that hearing claimant testified, through an interpreter, that the new duties in the foundry were "completely different" than those he had done in the yard, and that he had left work because he felt forced to do jobs that were dangerous because of his inexperience. He admitted he had not expressed to his supervisor his feelings that the work was dangerous, but had simply told him he "couldn't do it." Claimant also offered the testimony of a former co-worker who related that the jobs in the foundry were more complicated and dangerous than the work required in the yard.

Employer's only witness was the foundry foreman who had discussed the job transfer with claimant on his last day of work. He testified that he had told claimant the following:

> [H]e would be working at the foundry and that because there was not enough cutting at the foundry, he would also have to do some other things. [Claimant] would be trained by good qualified people to perform the other duties.... [A]nd at this time, he objected to doing some of the other things for the same money; therefore, I don't have control over the money, but I told him that along the way he would be taught how to do the grinding and loading and unloading

the car. And some of the loading is when the metals are hot, you know, but that he would have special equipment and it's a very simple job. And he said he was unhappy with—you know—doing the other duties, and he informed me that he wouldn't do all those other things for the same price. And so I told him—you know—that that's what the job would entail. And he, being displeased, said he would take the matter to the labor board, and left.

The record does not indicate that claimant attempted to settle his grievance before filing his claim.

At the end of the hearing, employer's counsel asked the tribunal to affirm the deputy's determination that claimant voluntarily quit without good cause because he did not attempt the work before leaving, and did not try to adjust any grievance before leaving, as required by A.A.C. R6–3–50210(C).[4] Claimant's counsel argued that the tribunal should reverse the deputy's determination as incorrectly based on employer's erroneous contention that the work was the same at the transferred position. Instead, claimant posits he was given new and substantially different duties, which required a finding that he was discharged under A.A.C. R6–3–50315.

On February 25, 1987, the appeals tribunal issued its decision affirming the deputy's determination. The tribunal factually found that, although claimant's new job would have involved some new duties, claimant walked off the job because "he did not wish to perform the job at the same pay he had been receiving as a torch operator," and that he had made no attempt to adjust his grievance prior to leaving the job site. The tribunal also concluded that "[t]he evidence does not establish that the changes in claimant's job duties were so substantial that the transfer would constitute an offer of new work."

---

4. A.A.C. R6–3–50210(C) provides in part:
   A reasonable worker will not quit impulsively. He will attempt to maintain the employment except when this is impossible or impractical. Good cause is generally not established unless the worker takes one or more of the following

steps prior to quitting in an attempt to adjust the grievance:
   1. Give the work a fair trial.
   2. Attempt to adjust unsatisfactory working conditions....

Claimant petitioned for review to the appeals board, arguing that the tribunal's conclusion that he was not transferred to a new job was contrary to the evidence and an incorrect interpretation of A.A.C. R6–3–50315. Claimant argued that, even if he made the disputed statement that he quit because he wanted more money, this evidence supported his position because it showed he was transferred to a new job requiring new and different skills.

On April 23, 1987, the appeals board affirmed the tribunal's decision, adopting the findings, reasoning, and conclusions of law as its own. In its affirmance, however, the appeals board added the additional authority of A.A.C. R6–3–50500(D) and concluded that claimant left work because he was refused a pay increase.

Claimant requested review from that decision. In its subsequent decision affirming upon review, the appeals board made the following conclusions:

> The *credible* evidence in this case established that the Claimant quit his job because he did not want to perform the new duties assigned to him at the same rate of pay.
>
> ....
>
> Although the Claimant's testimony shows he may have had some concern doing the newly assigned work, the claimant does not dispute the Employer would have provided safety equipment and training in the use of equipment and methods necessary to carry out the job function nor has the Claimant provided evidence to establish the work would have been unsuitable....

Claimant timely appealed from this decision.

### 4. *Discussion*

■ (a) *Refusal of Pay Increase.* As a preliminary matter, we hold that the appeals board incorrectly applied A.A.C. R6–3–50500(D) in this case. That rule requires as a predicate to disqualifying a claimant from benefits that refusal of a pay increase be the *sole* reason the claimant leaves work. The uncontroverted evidence in this case indicates that claimant did not leave work *solely* because his employer would not increase his pay, but also because he was assigned new duties for which he lacked experience. The employer's witness testified that the reasons claimant gave for leaving were "the lack of experience and the difference in pay." Claimant testified that he left work because "they wanted me to do some other kind of job I can't ... because I have no experience."

Both the appeals tribunal and the appeals board acknowledged claimant's concern that some of the new functions would be dangerous because of his lack of experience, but both concluded that, because employer would have provided safety equipment and training, claimant had not met his burden of proof. The predicate issue, however, in the application of A.A.C. R6–3–50500(D) is whether the refusal of a pay increase was claimant's *sole* reason for leaving. This evidence clearly indicates that claimant's lack of experience in the new job duties was an additional reason for leaving. The appeals board's application of A.A.C. R6–3–50500(D) therefore was erroneous as a matter of law and its decision cannot be affirmed on that basis.

If, however, the decision can be sustained on another legal basis, we will affirm. *See, e.g., Webster v. Board of Regents,* 123 Ariz. 363, 365, 599 P.2d 816, 818 (App.1979).

We therefore will examine the other basis for the appeal board's decision.

(b) *Refusal of Offer of New Work.* The appeals board affirmed the tribunal's determination that claimant's new duties were not so substantial as to constitute new work. We agree with claimant that the board and tribunal were mistaken.

In interpreting these administrative regulations, we are mindful that the Employment Security Act is remedial legislation that should be liberally construed. Our supreme court long ago established this approach:

> In coming to any answer it has been remembered that the statute is remedial; that it enunciates and is addressed to a public policy; that it is ameliatory of the evils resulting from lack of employment;

that it is to be liberally construed to effectuate its purpose; that devices of every kind to defeat it are to be frowned upon and stricken down; and that by the several Arizona cases construing and giving it effect this court has adopted an interpretation of it strictly in accord with its intent and objects as announced by the legislature in the preamble to the Act.

*Southwest Lumber Mills, Inc. v. Employment Sec. Comm'n,* 66 Ariz. 1, 5, 182 P.2d 83, 85 (1947); *see also DES v. Little,* 24 Ariz.App. 480, 483, 539 P.2d 954, 957 (1975).

The employer argues that, although the Act is remedial, the supreme court has qualified the requirement of liberal construction by the following statement:

> It is true that the Employment Security Act is remedial and should be liberally construed in keeping with its beneficent purposes. But this rule alone cannot displace the requirement that claimant show why he is entitled to benefits under the act.... The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.

*Cramer v. Employment Sec. Comm'n,* 90 Ariz. 350, 355–56, 367 P.2d 956, 960 (1962), quoting *Krauss v. A. & M. Karagheusian,* 13 N.J. 447, 455–56, 100 A.2d 277, 281 (1953).

■ We think the employer has misconstrued the nature of this reasoning, which simply established that even when a liberal construction is applied, a claimant must still meet the burden of showing entitlement to benefits. In making that determination, however, the law and the facts must first be interpreted liberally to grant benefits and narrowly to deny benefits. Such an interpretation best serves the stated statutory policy of providing benefits

for unemployed workers. *See* A.R.S. § 23–601.

■ In this case, we conclude from the record that the department neither liberally nor, indeed, fairly construed the definition of "an offer of new work" in A.A.C. R6–3–50315 and R6–3–50440(F) [5] in an effort to effectuate the remedial purpose of those regulations. In applying the above facts to the regulations, we take a liberal approach in reaching our independent legal conclusion.

The undisputed facts are that claimant was assigned 5 new job duties that he had never before performed. Those duties required additional safety equipment and extensive training in operation of machinery that claimant had not before been required to operate, including an overhead crane, a quench, grinding equipment, and sandblasting equipment. The fact that he had never before been asked to perform these duties in his 2½ years of employment also indicates that these duties were "not expressly or impliedly authorized in the original employment relationship." *See* A.A.C. R6–3–50315(2). Additionally, claimant's transfer to a different department with different duties than he had previously performed also indicates "new work." *See* A.A.C. R6–3–50440(F).

On the basis of the undisputed evidence, we hold that the appeals board erred as a matter of law in finding the changes in claimant's working conditions were not so substantial as to constitute a new job. Because the new duties constituted new work, claimant did not voluntarily leave work without good cause pursuant to § 23–775(1); rather, the resignation constituted a discharge and a refusal of an offer of new work pursuant to A.A.C. R6–3–50315.

■ (c) *Burdens of Proof.* Whether a claimant's resignation is treated as a volun-

---

**5.** A.A.C. R6–3–50440(F) provides in part:
F. Altered conditions of work
1. When an individual leaves work because the conditions of employment are altered from those existing at the time of hire or in a prior job assignment a question arises as to whether there was an offer of a new job. In some

instances the altered working conditions constitute new work. This includes cases such as a new contract of hire, transfer to a different department, a different type of work, or a different plant. For a discussion of cases involved in "New Work" see R6–3–50315.

tary quit or a discharge makes a substantial difference in the decision to grant or deny benefits. If a claimant is found to have voluntarily left employment without good cause, the burden is on the claimant to show an excusable compelling reason or good cause for leaving. A.A.C. R6–3–50190(B).[6] Additionally, if a claimant voluntarily left, he must have attempted to adjust his grievance before leaving, and must have given the work a "fair trial," in order to show good cause. A.A.C. R6–3–50210(C).

If, however, the employer is found to have discharged the claimant, the employer has the burden of showing the discharge was for good cause. *See* A.A.C. R6–3–50190(B). A finding of discharge thus does not require a claimant to show he attempted the new work or tried to adjust his grievance, because he has no burden to show good cause for leaving. A finding of discharge thus makes it easier for a claimant to support his claim for benefits than does a finding that he voluntarily left.

In this case, because the deputy had determined that claimant voluntarily left his employment, both the appeals tribunal and the appeals board imposed the burden on claimant to show good cause for leaving. Because, however, the resignation actually constituted a discharge, the employer had the burden to show good cause. One way for the employer to meet this burden would be to show that claimant had refused an offer of "suitable work," thus disqualifying himself for benefits. *See* A.R.S. § 23–776.[7]

■ (d) *Refusal of Suitable Work.* Employer alternatively contends on appeal that, even if the job transfer constitutes "new work" within the meaning of A.A.C. R6–3–50315, the denial of benefits would be justified because claimant refused an offer of "suitable work" pursuant to § 23–776. In its answering brief, employer utilizes the terms "new work" and "suitable work" interchangeably in an effort to convince us to affirm the appeals board's decision. We disagree.

Here, employer did not argue before the administrative boards that claimant's new duties constituted "suitable work" under § 23–776. Furthermore, the refusal of "suitable work" under § 23–776 was neither a basis of the appeals board's decision, nor was the issue raised in the petition for review before the appeals board. The employer is statutorily prohibited from raising this issue for the first time on appeal, *see* A.R.S. § 41–1993, so we need not address it. We do note, however, that in its answering brief, employer conceded that "a discharge does require an employer to prove that the discharge was for cause, *which would not exist in this case.*" (Emphasis added.) Having made this conces-

---

6. A.A.C. R6–3–50190(B) provides:

B. Burden of proof and presumption
1. The burden of proof consists of the requirement to submit evidence of such nature that, taking all other circumstances into account, the facts alleged appear to be true. When this burden has been met, the evidence becomes proof.
2. The burden of proof rests upon the individual who makes a statement.
   a. If a statement is denied by another party, and not supported by other evidence, it cannot be presumed to be true.
   b. When a voluntary leaving has been established, the burden of proof rests on the claimant to show that it was for non-disqualifying reasons.
C. When a claimant states that he did not leave voluntarily, and the employer maintains he did, the burden of proof shifts to the employer to establish that there has been a quit.

7. A.R.S. § 23–776 provides, in part:

A. An individual shall be disqualified for benefits if the department finds he has failed without cause either to apply for available, suitable work, when so directed by the employment office or the department, or to accept suitable work when offered him, or to return to his customary self-employment when so directed by the department. The disqualification shall begin with the week in which the failure occurred and shall continue for the duration of his unemployment and until he has earned wages in an amount equivalent to eight times his weekly benefit amount otherwise payable.
B. In determining whether or not work is suitable for an individual, the department shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation and the distance of the available work from his residence.

sion, employer may not relitigate the issue on remand.

### 5. *Conclusion*

Because the evidence shows that claimant did not leave work solely because he was denied a pay increase, the board improperly applied A.A.C. R6-3-50500(D) to find that he voluntarily left employment without cause. Furthermore, the undisputed evidence regarding the nature of claimant's job duties compels the legal conclusion that his changed working conditions constituted an offer of new work, and his refusal of that new work constituted a discharge attributable to the employer under A.A.C. R6-3-50315. The employer thus had the burden of proof to show good cause for the discharge. The employer did not argue claimant's refusal of suitable work as good cause before the administrative agency, and may not now raise the issue.

Based on the foregoing reasons, we hold that the appeals board erroneously denied claimant unemployment benefits by determining that he voluntarily left employment without good cause. We reverse that decision and remand this matter for an award of benefits consistent with this opinion. *See* A.R.S. § 41-1993; 1 *Arizona Appellate Handbook* § 8.12 (2d ed. 1986).

GREER and HAIRE, JJ., concur.