815 P.2d 418

**Rudy CASTANEDA, Appellant,**

**v.**

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an agency, Arizona Boys Ranch, Inc., Appellees.**

**No. 1 CA–UB 90–017.**

Court of Appeals of Arizona, Division One, Department A.

Aug. 1, 1991.

---

Grant Woods, Atty. Gen. by Rick E. Olson, Asst. Atty. Gen., Phoenix, for appellees.

Rudy Castaneda, in pro. per.

## OPINION

LANKFORD, Judge.

Mr. Rudy Castaneda appeals from a Department of Economic Security Appeals Board decision denying him unemployment benefits upon his termination from employment. The appeals board held that because Mr. Castaneda was discharged for misconduct in connection with his employment he is disqualified from receiving benefits pursuant to A.R.S. § 23–775. Because we do not agree that Mr. Castaneda's actions in a personal emergency constituted misconduct under the statute, we reverse.

### I.

The essential facts are undisputed. Mr. Castaneda was employed as a social worker by Arizona Boys Ranch, Inc. for approximately eleven and a half months prior to being discharged on July 5, 1989.

On June 27, 1989, Mr. Castaneda's supervisor, Mr. Barber–Lindstrom, Social Services Coordinator, asked Castaneda to accompany a resident juvenile to a placement review hearing in Mesa, Arizona. Mr. Castaneda was not originally scheduled to attend this hearing. However, he did so as a favor to Barber–Lindstrom, who had told Castaneda that an unspecified schedule conflict prevented Barber–Lindstrom from attending. Mr. Castaneda took the juvenile to the hearing. They arrived in time for the 2:00 P.M. hearing; however, after waiting for an hour, the case had not yet been called.

At approximately 3:00 P.M., while still waiting for the hearing, Mr. Castaneda received an urgent phone call from his fiancee. She was hysterical and told Mr. Castaneda that she was hemorrhaging, that she thought she was undergoing a miscarriage, had no means of transportation, and was waiting for a return call from her physician.

Mr. Castaneda immediately informed the juvenile's attorney and guardian ad litem and his case worker from Child Protective Services, who were present at the hearing, that he had an emergency at home and asked whether it was necessary for the

juvenile to be present at the hearing. After both stated it was not necessary,[1] Mr. Castaneda related the status of the juvenile's progress and what he thought should happen at the hearing. Mr. Castaneda then returned the juvenile to the employer's facility, left him with the supervisor in charge, informed the secretary that he had to leave and left the premises at 3:30 P.M. to attend to his fiancee's emergency.

At approximately 4:00 P.M., while waiting with his fiancee for instructions from her physician, Mr. Castaneda received a phone call at his home from Barber–Lindstrom. Mr. Castaneda told Barber–Lindstrom that a personal emergency had arisen and that he did not know when he could return to work. Mr. Castaneda declined to explain further.

Barber–Lindstrom conferred with the facility's acting supervisor because the Ranch director and assistant director were absent. They decided that Mr. Castaneda would have to appear at work in the morning to discuss the matter or be terminated. Mr. Castaneda by that time had discussed the matter by phone with his former supervisor, Mr. Montaque, who was employed at the Boy's Ranch, apparently in a different capacity. Mr. Castaneda's fiancee was also employed at the Arizona Boys' Ranch. Only Mr. Montaque knew she was pregnant and he had agreed to keep this information confidential. Barber–Lindstrom instructed Montaque to threaten Mr. Castaneda with job termination unless Castaneda appeared at work the next day. Montaque related Barber–Lindstrom's demand to Castaneda. Mr. Castaneda subsequently took his fiancee to the hospital where she received medical treatment and miscarried.

Mr. Castaneda appeared at work the next morning as he had been instructed. Although Castaneda had no prior history of absenteeism and no record of other work problems, Barber–Lindstrom accused Mr. Castaneda of being unreliable and having an attitude problem. He demanded that

Mr. Castaneda explain the details of the personal emergency. However, Mr. Castaneda again declined to explain why he had left the hearing except to say that it was a personal problem and that he would be willing to discuss it with Montaque or with the facility's assistant director, Ms. Fitchie, when she returned the next day. Mr. Castaneda later testified at the hearing that the matter was confidential and he did not want his personal life "spread all over the ranch."

The following day, Mr. Castaneda met with assistant director Fitchie, fully explained the circumstances of his leaving and absence, and told her that he would be unable to return to work for a few days. Mr. Castaneda was entitled to take time off for accrued compensation time, which he used for the next two work days of June 30 and July 3. After the July 4 holiday, Mr. Castaneda reported for work on July 5. Despite Castaneda's complete explanation of his absence, Ms. Fitchie terminated his employment when he returned to work on July 5.

## II.

Mr. Castaneda immediately filed a claim for unemployment benefits. The DES deputy determined that he was not eligible for benefits because he had been terminated for misconduct connected with the employment. Mr. Castaneda contested this determination and an appeal tribunal, after hearing testimony from both the employer and the claimant, affirmed the decision of the deputy.

Mr. Castaneda appealed this decision to the DES Appeals Board. The appeals board adopted the findings of fact and conclusions of law of the tribunal and affirmed the denial of benefits. Upon Mr. Castaneda's request for review of the board's decision, the board again affirmed the denial of benefits. Mr. Castaneda then appealed to this court. We granted the application for appeal pursuant to A.R.S. § 41–1993 and now reverse.

---

**1.** Although it is true, as the appeals board stated, that a juvenile has the right to attend a placement review hearing, the appellee has never contended that the juvenile's presence is required, and the appeals board did not find that the juvenile's attendance is mandatory.

This court accepts the findings of fact of the appeals board unless they are arbitrary, capricious, or an abuse of discretion. *Munguia v. Dep't of Economic Sec.,* 159 Ariz. 157, 765 P.2d 559 (App.1988); *Thompson v. Arizona Dep't of Economic Sec.,* 127 Ariz. 293, 619 P.2d 1070 (App. 1980). We have read and considered the record in this case, including the testimony before the tribunal, and conclude that the appeals board did not err in its factual findings.

Conversely, we do not defer to the appeals board's legal conclusions, but independently determine how the law applies to the facts. *Munguia, supra; Prebula v. Arizona Dep't of Economic Sec.,* 138 Ariz. 26, 672 P.2d 978 (App.1983). When an employee is discharged for alleged misconduct, the employer must sustain the burden of showing that the employee's actions disqualify him from benefits. *Magma Copper Co. v. Arizona Dep't of Economic Sec.,* 128 Ariz. 346, 625 P.2d 935 (App. 1981). We conclude that the board erred in its determination that Mr. Castaneda's conduct constituted disqualifying misconduct.

### III.

The appeals board purported to apply A.R.S. § 23–775, part of the Employment Security Act, which provides in relevant part:

An individual shall be disqualified for benefits:

. . . .

2. For the week in which he has been discharged for *wilful or negligent misconduct connected with the employment,* and in addition to the waiting week, for the duration of his unemployment and until he has earned wages in an amount equivalent to five times his weekly benefit amount otherwise payable.

(Emphasis added).

A proper application of this statute requires consideration of A.R.S. § 23–619.01, in which the Legislature defined "misconduct connected with the employment." Neither the appeal tribunal, nor the appeals board, nor counsel for appellee on appeal cited this legislative definition. Nevertheless, the Legislature's definition of misconduct is controlling.

A.R.S. § 23–619.01 provides:

A. "Misconduct connected with the employment" means any act or omission by an employee which constitutes a material or substantial breach of the employee's duties or obligations pursuant to the employment or contract of employment or which adversely affects a material or substantial interest of the employer.

B. "Wilful or negligent misconduct connected with the employment" includes, but under no circumstances is limited to, the following:

1. Absence from work without either notice to the employer or good cause for failure to give notice, repeated absence from work without good cause where warnings regarding repeated absence have been received from the employer, frequent absences from work without good cause, failure to return to work following an authorized leave, vacation, sick leave or other leave of absence when such failure is without permission from the employer, or repeated failure without good cause to exercise due care for punctuality or attendance in regard to the scheduled hours of work set by the employer.

. . . .

3. Refusal or knowing failure to perform reasonable and proper duties assigned by the employer.

. . . .

We find nothing in this statutory definition from which the board, based upon the findings of fact, could conclude that Mr. Castaneda committed "misconduct." The Legislature specifically identified several examples of what type of employee conduct would constitute "misconduct." Section (B)(1) of the statute refers to "Absences from work without either notice to the employer or good cause for failing to give notice." Mr. Castaneda gave notice to the secretary at the ranch prior to leaving that he had to leave due to a personal emergency and he informed his supervisor that he

was absent due to a personal emergency. Furthermore, he stated he would discuss the full circumstances of the situation with the assistant director. Nothing in the statute suggests that an employee gives adequate "notice" only when he immediately reveals his personal problems in minute detail to every individual in the supervisory chain of authority.

The Legislature further cited as examples of "misconduct": "frequent absences without good cause," "[r]epeated intoxication," "[r]efusal to perform duties," and "dishonesty." Comparing these examples of "misconduct" with Mr. Castaneda's situation, we do not believe the Legislature intended to deny benefits in such circumstances. We are persuaded that Mr. Castaneda faced a serious personal emergency with reasonable accommodation to the employer's interest, a situation wholly unlike those contemplated by the Legislature as "misconduct."

Regulations promulgated by the DES itself pursuant to A.R.S. § 41–1954 further demonstrate that Mr. Castaneda's actions did not constitute disqualifying misconduct. The Arizona Administrative Code, R6–3–5115, distinguishes absences which constitute misconduct from excusable absences which do not disqualify the employee from benefits:

A. GENERAL

1. Implicit in the work relationship is the duty of the employee to report for work and remain at work in accordance with the reasonable requirements of his employer. This duty is not absolute, but is qualified by circumstances relative to the situation of both employee and employer. In determining if a claimant's absence from work is a disregard of his employer's interest due regard must be accorded to the customs and conditions of work.

. . . .

D. REASONS FOR ABSENCE

1. A claimant who is discharged due to absences beyond his control such as illness, accident, unavoidable delay in transportation, *urgent domestic responsibilities* and the like is discharged for reasons other than misconduct. Even repeated absences for these causes are not deemed to be misconduct if the facts indicate the absence could not have been avoided. However, failure to give notice of such absences may constitute misconduct. . . .

2. *Absence from work due to reasonably pressing domestic circumstances is not misconduct when proper notice is given. For example: serious illness or death of a close relative* is deemed of such pressing circumstances as to justify the absence.

3. A claimant's discharge is considered to be for misconduct connected with his work when he is discharged because of an absence from work, when

a. He is absent for capricious reason; or

b. *He is absent for causes he does not substantiate, or gives no excuse for;* or

c. He is absent from work due to intoxication.

(Emphasis added).

The appeal tribunal and appeals board found that Mr. Castaneda's absence from work was due to personal emergency. Applying the "urgent domestic responsibilit[y]" rule of the regulation to this finding compels the conclusion, as a matter of law, that Mr. Castaneda did not commit misconduct. Although we would have not thought it necessary to state it, the miscarriage of one's unborn child can be an extremely traumatic experience, both for the mother and the father. Mr. Castaneda was entitled to attend to the immediate physical and emotional needs of his fiancee, the mother of his unborn child, and to his unborn child.

Counsel for appellee argues that Mr. Castaneda did not have a "legally sufficient relationship" with his fiancee to qualify as an excusable "domestic" matter. Counsel cites no authority for this position, and we are aware of none. Regardless of the legal relationship between Mr. Castaneda and his fiancee, it is beyond any reasonable dispute that an emergency involving

one's unborn child qualifies as a "domestic" matter.

The tribunal and the board nevertheless concluded that Mr. Castaneda committed work-related misconduct because of the manner in which he departed and his failure to immediately explain the details of his personal emergency to two of his superiors. The tribunal and the board faulted Mr. Castaneda for returning the juvenile to the facility before going home; rather, the board felt Mr. Castaneda should have called the facility, requested that a substitute social worker be found, and then wait at the hearing with the juvenile for the substitute to arrive.

Perhaps, with the benefit of hindsight, there were better approaches to dealing with the situation. Nevertheless, the issue is whether Mr. Castaneda's actions under the circumstances constituted misconduct connected with his employment. The issue is not whether in hindsight the employer would have preferred that the employee respond to the situation differently. Faced with a domestic crisis, Mr. Castaneda made a judgment call. He determined that the juvenile's presence at the hearing was not required. He prepared the juvenile's attorney and guardian ad litem for the hearing. Mr. Castaneda discharged his responsibility for the custody of the juvenile by returning him to the facility. By any humane measure, Mr. Castaneda's response to a medical and emotional crisis was not misconduct.

Our conclusion is further supported by the remedial purpose of the Employment Security Act, which requires that it be construed liberally to effectuate its compensatory purpose. *Munguia, supra.* When an employee has to make a quick judgment under difficult circumstances, and he makes a reasonable but perhaps imperfect decision, that decision is not misconduct disqualifying him from unemployment benefits.

The tribunal and the board further fault Mr. Castaneda for not immediately and fully explaining his absence to both of his superiors who were interested in the details of his personal emergency. The DES regulation does permit disqualification for absences due to unsubstantiated causes. R6–3–5115(D)(3)(b). Mr. Castaneda did inform his superiors that he was absent due to a personal emergency and offered to explain the nature and details of the problem to the absent assistant facility director when she returned the next day. Furthermore, Mr. Castaneda advised the office before he left that he had to leave. Most importantly, Mr. Castaneda met with the assistant director shortly thereafter and explained his circumstances prior to taking compensation time the next two work days.

It is evident that Mr. Castaneda was terminated, not for leaving the hearing, nor for failure to give notice of his absence, nor for failing to substantiate his absence, but because he did not disclose immediately to Barber–Lindstrom the details of his confidential problem. Mr. Castaneda told his supervisors that he had a personal emergency that required his absence, that the nature of the emergency was confidential, and that the details of the situation would be promptly disclosed to a higher authority in the employer's organization. We find nothing in the statute or regulation that makes this misconduct. It is undisputed that Mr. Castaneda made a full explanation to the employer within a reasonable time. The employer has never disputed that Castaneda's explanation to the acting director constituted the substantiation required by the regulation.

Although the tribunal and the board correctly found the facts, we conclude that they erred in their application of the law and their denial of Mr. Castaneda's claim of benefits. The decision of the appeals board is reversed. We remand this case for an award of benefits.

TAYLOR, P.J., and CONTRERAS, J., concur.