302 P.3d 666

Michael COOKE, Appellant,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,

and

AZ Developmental Disabilities, Appellees.

No. 1 CA–UB 12–0095.

Court of Appeals of Arizona, Division 1, Department E.

May 14, 2013.

---

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C. by Thomas G. Cotter, Nathan B. Webb, Tucson, Attorneys for Appellant.

Thomas C. Horne, Attorney General by Benjamin Runkle, Assistant Attorney General, Phoenix and Dawn R. Williams, Assistant Attorney General, Tucson, Attorneys for Appellee Arizona Department of Economic Security.

## OPINION

PORTLEY, Judge.

¶ 1 Carolyn Cooke, the mother of ten-year-old Michael Cooke, challenges the Appeals Board's conclusion that the Arizona Department of Economic Security ("ADES"), Division of Developmental Disabilities ("DDD") properly determined that her son was not eligible for disability benefits and services. For the following reasons, we reverse the determination.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Michael has Apert's Syndrome, a genetic defect that causes premature fusing of skull bones and often hinders normal brain development. He received developmental disability services until June 15, 2010, when DDD concluded that he lacked a qualifying diagnosis that would make him eligible to continue to receive services.

¶ 3 Ms. Cooke requested a hearing. At the hearing, child psychologist Dr. Michael Lavoie testified on Michael's behalf. He stated that Michael's scores on the Weschler Intelligence for Children test were: Verbal Comprehension—79, Perceptual Reasoning—71, Working Memory—83, Processing Speed—65, Full Scale—69. Accordingly, Dr. Lavoie concluded that Michael "met the diagnostic criteria for ... Mild Mental Retardation" because his full scale intelligence quotient score was 69.

¶ 4 Robert Klaehn, M.D., DDD's medical director, however, testified that Michael's benefits were properly terminated because Michael's full scale Weschler score was mis-

leading because the Diagnostic and Statistical Manual of Mental Disorders, 4th Edition ("DSM–IV") provides that significant differences in sub-test scores tend to result in misleading cumulative scores. Moreover, he testified that Michael does not have a cognitive disability under § 502.5 of the Arizona Department of Economic Security—Division of Developmental Disabilities, Policy and Procedures Manual ("DDD Policy and Procedures Manual")[1] because three of his sub-test scores were not two or more standard deviations below the mean.

¶ 5 The Administrative Law Judge ("ALJ") ruled that the DDD properly terminated Michael's benefits. Although the ALJ found that Michael's full scale IQ was 69, "which is two standard deviations below the mean," he also found that § 502.5.1(f) of the DDD Policy and Procedures Manual "indicates that the diagnosis of cognitive disability is not supported when subscale scores fall outside the range associated with cognitive disability." Ms. Cooke appealed the ruling to the ADES Appeals Board.

¶ 6 The Appeals Board reviewed the record, made independent findings of fact and conclusions of law, and two of the three members found that Michael had not demonstrated a cognitive disability. Specifically, the majority found "that the 'Full Scale' IQ number, taken alone, cannot explain [Michael]'s ability to score well above two standard deviations on all but one of the component factor subtests." Additionally, the majority endorsed DDD's policy requiring a conclusion that an applicant is not cognitively disabled if his or her "sub-scale scores fall outside the range associated with cognitive disability." DDD Policy and Procedures Manual § 502.4(A)(6). The majority then determined that DDD properly denied Michael's DDD eligibility.

¶ 7 The Appeals Board's dissenting member argued that the majority "misinterpreted the definition of 'subaverage general intellectual functioning'" under Arizona Revised Statutes ("A.R.S.") section 36–551(40), which "[i]n layman's terms ... means that a person must score below 70 on an IQ test." Despite Dr. Klaehn's testimony, the dissenter found that Michael's IQ of 69 satisfied the definition of "subaverage general intellectual functioning" and therefore the first requirement of cognitive disability. He then argued that the evidence supported a finding that Michael's subaverage general intellectual functioning exists concurrently with deficits in adaptive behavior. As a result, he concluded that Michael has a developmental disability attributable to a cognitive disability as defined in A.R.S. § 36–551(17) and stated that the denial of Michael's eligibility to receive DDD services should be reversed.

¶ 8 Ms. Cooke unsuccessfully requested review of the Appeals Board's decision. This timely appeal followed.

## DISCUSSION

¶ 9 Ms. Cooke contends that the Appeals Board erred when it affirmed the determination that her son was not eligible for disability benefits and services. Specifically, she asserts that the Appeals Board failed to adhere to the statutory definition of cognitive disability by following the stricter requirement set forth in the DDD Policy and Procedures Manual. She also argues that the Appeals Board abused its discretion when it declined to take additional evidence regarding the calculation of Michael's full scale IQ.

¶ 10 We review the Appeals Board's findings of fact for an abuse of discretion and determine whether the findings are arbitrary and capricious or, alternatively, are supported by substantial evidence. *Munguia v. Dep't of Econ. Sec.*, 159 Ariz. 157, 158–59, 765 P.2d 559, 560–61 (App.1988). Moreover, we view the evidence "in a light most favorable to upholding the decision of the appeals board and will affirm that decision if it is supported by any reasonable interpretation of the record." *Prebula v. Ariz. Dep't of Econ. Sec.*, 138 Ariz. 26, 30, 672

---

1. The DDD Policy and Procedures Manual (January 1996) was revised, effective February 23, 2012. *See* Department of Economic Security—Division of Developmental Disabilities, *Policy and Procedures Manual,* available at https://www. azdes.gov/uploadedFiles/Developmental Disabilities/500.pdf. DDD renumbered § 502.5.1(f) to 502.4(A)(6) but otherwise did not change the substance of the provision.

P.2d 978, 982 (App.1983). However, we "are free to draw our own legal conclusions in determining if the appeals board properly interpreted the law." *Munguia*, 159 Ariz. at 159, 765 P.2d at 561.

## I. DDD's Interpretation of A.R.S. § 36–551(40)

¶ 11 Eligibility for developmental disability benefits is determined by statutory requirements in A.R.S. § 36–559 (West 2013) and the guidelines stated in the Arizona Administrative Code ("A.A.C.") R6–6–302. The statute provides that a person seeking benefits must be an Arizona resident and must be developmentally disabled. A.R.S. § 36–559(A)(1)–(2); A.A.C. R6–6–301(A). A developmental disability can be established by proof that a person has a "severe, chronic disability" attributable to a cognitive disability, cerebral palsy, epilepsy or autism that presents before the age of eighteen, that is likely to continue indefinitely, and that results in substantial functional limitations in three or more defined areas of major life activity. A.R.S. § 36–551(18)(a)–(d). "Cognitive disability" is defined as "a condition that involves subaverage general intellectual functioning, that exists concurrently with deficits in adaptive behavior manifested before age eighteen and that is sometimes referred to as intellectual disability." A.R.S. § 36–551(13).

¶ 12 Here, Ms. Cooke established that her son has a full scale IQ of 69 and argued that he has a cognitive disability. The majority of the Appeals Board, however, discounted the score because Dr. Klaehn testified that he used § 502.4(A)(6) of the DDD Policy and Procedures Manual to interpret the individual Weschler subtests and determined that Michael did not have subaverage general intellectual functioning as defined in A.R.S. § 36–551(40). Ms. Cooke challenges the Appeals Board's consideration of the DDD Policy and Procedures Manual to interpret the statute.

¶ 13 We review the issue of statutory interpretation de novo. *Stapert v. Ariz. Bd. of Psychologist Exam'rs*, 210 Ariz. 177, 179, ¶ 7, 108 P.3d 956, 958 (App.2005); *Rice v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 199, 203, 901 P.2d 1242, 1246 (App.1995) (finding that the appellate court is responsible for interpreting a statute or regulation). Similarly, administrative regulations are reviewed like statutes, *Stapert*, 210 Ariz. at 179, ¶ 7, 108 P.3d at 958, and we interpret a regulation to "further the statutory policy contained in its enabling legislation." *Marlar v. State*, 136 Ariz. 404, 411, 666 P.2d 504, 511 (App.1983); *see also Dioguardi v. Superior Court (Ariz. Bd. of Med. Exam'rs)*, 184 Ariz. 414, 417, 909 P.2d 481, 484 (App.1995) (explaining that we would strike down an agency's rule "that would defeat the legislative purpose").

¶ 14 "Subaverage general intelligence functioning" is statutorily defined as "measured intelligence on standardized psychometric instruments of two or more standard deviations below the mean for tests used." A.R.S. § 36–551(40).[2] The ADES policy, however, interprets the statutory definition to mean:

> [t]ests, which provide multiple sub-test scores, require interpretation of the full array of test results including sub-scale and sub-test scores before arriving at a diagnosis. The diagnosis of cognitive disability is not supported *when the sub-scale scores fall outside the range associated with cognitive disability.*

DDD Policy and Procedures Manual § 502.4(A)(6) (emphasis added). The policy, as a result, creates a more stringent eligibility requirement than the statutory definition of subaverage general intelligence functioning.

¶ 15 The policy may be helpful to DDD in determining eligibility, but it has not been promulgated as a rule pursuant to the Administrative Procedure Act. *See* A.R.S. § 41–

---

2. The tests that can be used to measure a child's intelligence can include Wechsler Intelligence Scales (Wechsler Preschool and Primary Test of Intelligence, Wechsler Intelligence Scale for Children or Wechsler Adult Intelligence Scale), the Stanford–Binet, the Hiskey–Nebraska Test of Learning Aptitude, the Arthur Point Performance Tests, and the Kaufman Assessment Battery for Children.

1001(18) (West 2013).[3]   Although ADES can develop different administrative rules "for the admission of developmentally disabled persons to the programs and services," A.R.S. § 36–554(C)(6) (West 2013), because DDD policy § 502.4(A)(6) is not an administrative rule, we review it to determine whether it supports the statute.  If it does, we then have to determine whether the Appeals Board appropriately applied it; if not, the determination of the majority of the Appeals Board cannot stand.

¶ 16 DDD Policy and Procedure Manual § 502.4(A)(6) defines subaverage general intelligence functioning more stringently and, therefore, more narrowly than A.R.S. § 36–551(40).   The statutory definition only requires a determination of "measured intelligence on standardized psychometric instruments of two or more standard deviations below the mean for the tests used"—the full-scale IQ. The statutory definition, unlike the DDD provision, does not require that each sub-test score must "fall outside the range associated with cognitive disability" before a person is found to have subaverage general intellectual functioning, regardless of the full-scale IQ. The DDD provision, as a result, changes the statutory definition by requiring an analysis and setting a standard the legislature does not require.  See Maldonado v. Ariz. Dep't of Econ. Sec., 182 Ariz. 476, 478, 897 P.2d 1362, 1364 (App.1994) (holding that ADES's interpretation of its regulation "frustrates the purpose of the statute" because the statute provides for a less stringent application than that used by ADES).

¶ 17 Moreover, our supreme court considered a similar argument made by a criminal defendant in State v. Roque, 213 Ariz. 193, 141 P.3d 368 (2006).   There, the defendant who was sentenced to death attempted to argue that he was "mentally retarded and thus not subject to execution." Id. at 227, ¶ 145, 141 P.3d at 402.  Despite his full scale IQ of 80, he argued the court should look to the lowest of his sub-tests to determine that he was mentally retarded. Id. at ¶ 148.   The court found that he had "misinterpret[ed] the statute" because it "does not refer to individual IQ sub-tests or indices, but rather employs a single intelligence quotient as an initial measure of significantly subaverage general intellectual functioning.   This number refers to the full-scale IQ." Id. at 228, ¶ 150, 141 P.3d at 403 (internal quotation marks and citations omitted).   Consequently, the court rejected his argument. Id.

¶ 18 Mindful that we review the plain language of an unambiguous statute to determine legislative intent, we conclude that the Appeals Board failed to follow § 36–551(40) by applying the more restrictive DDD provision, which is neither a statute nor an administrative rule.  See, e.g., Kaman Aerospace v. Ariz. Bd. of Regents, 217 Ariz. 148, 155, ¶ 29, 171 P.3d 599, 606 (App.2007) (stating that a public entity's administrative rules, "if consistent with its statutory scheme, 'are entitled to be given the force and effect of law' "). Consequently, the Appeals Board erred by using and endorsing the DDD provision to determine that Ms. Cooke did not demonstrate that her child had subaverage general intellectual functioning by proving his full scale IQ was "two or more standard deviations below the mean for the tests used."

¶ 19 Accordingly, we reverse the determination that Michael is not eligible for DDD disability benefits.  Because ADES conceded during argument that Michael is otherwise entitled to receive services, we remand the case and direct the Appeals Board to determine that Michael continues to be eligible for services.[4]

### ATTORNEYS' FEES

¶ 20 Ms. Cooke requests attorneys' fees pursuant to A.R.S. §§ 12–348 and 41–1007 (West 2013).   We find that she has prevailed in her appeal of an administrative

---

3.  The DDD Policy and Procedures Manual has not been filed with the Secretary of State and is not contained within the Arizona Administrative Code.

4.  Because of our ruling, we do not need to address Ms. Cooke's second argument that the Appeals Board abused its discretion by refusing to take additional evidence about Michael's full scale IQ. Nor are we required to decide whether ADES could properly enact an administrative rule containing the substance of DDD Policy and Procedure Manual § 502.4(A)(6), given the contrary language of A.R.S. § 36–551(40).

decision and is only entitled to receive an award of attorneys' fees and costs pursuant to § 12–348(A)(2), (E)(2) because ADES was substantially justified in defending the decision of the Appeals Board. Consequently, we will award her fees and costs on appeal upon compliance with § 12–348(D) and Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶ 21 We reverse the Appeals Board's determination that Michael's eligibility for DDD benefits was properly denied and remand this case for the award of benefits to Michael.

CONCURRING: MARGARET H. DOWNIE, Presiding Judge, and PHILIP HALL, Judge.