IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

TODD SIMMONS, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, *Appellee*.

No. 1 CA-UB 21-0171
FILED 9-20-2022

———————————————

Appeal from the A.D.E.S. Appeals Board
No. U-1720997-001-B

**REVERSED**

———————————————

COUNSEL

Engelman Berger, P.C., Phoenix
By Bradley D. Pack, Celeste D. Tabares (argued)
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Tom Jose (argued)
*Counsel for Appellee*

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

¶1        Todd Simmons appeals from the Arizona Department of Economic Security ("ADES") Appeals Board's decision denying him eligibility for Pandemic Unemployment Assistance ("PUA") under the federal Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020. We hold that denying a PUA claim is error if the evidence presented encompasses one of the eligibility criteria, there is no contradicting evidence, and no finding by the administrative law judge ("ALJ") that the testimony lacked credibility. Simmons presented sufficient evidence that he quit his job as a direct result of COVID-19, ADES presented no contrary evidence, and the ALJ made no finding that Simmons's testimony lacked credibility. He was, therefore, eligible for PUA and we reverse and remand for a determination of the amount of the award.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In March 2021, Simmons filed for PUA under the CARES Act, administered by ADES. He self-certified that he "quit [his] job because of COVID-19" and immediately began receiving PUA benefits. A month later, ADES sent Simmons a letter stating that, upon review of his claim, it determined that he did not qualify for PUA because his unemployment was "not a direct result of the COVID-19 Public Health Emergency." Simmons appealed ADES's decision.

¶3        ADES scheduled a telephonic hearing with Simmons as the only party. At the hearing, Simmons explained his reasons for filing a PUA claim to the ALJ. Simmons testified that in late 2020, he was ill and expended the paid sick leave provided by his previous employer. Unwilling to return to work while he was still ill, he was "forced out" of that employment. Three weeks later, in November 2020, he was hired by VXI Global Solutions ("Global Solutions") to work in Tucson as a customer service agent.

¶4            In Global Solutions's Tucson office, Simmons worked near other employees at a call center. Over the next several months, he became concerned about the office environment and his increased risk of COVID-19 exposure. He worried that Global Solutions was "playing it fast and loose with mask policies" and forcing employees to work while they exhibited COVID-19 symptoms or had tested positive for the virus. He was also concerned that the office was too cold, and the bathrooms had no hot water for employees to wash their hands.

¶5            He brought his complaints to Global Solutions and the Arizona Department of Occupational Safety and Health. Simmons asked Global Solutions to transfer him to another office or allow him to work from home. But Global Solutions told him there was no heater in the building, no opportunities to move, and he would have to keep working there. Because Simmons was concerned about contracting COVID-19 at the office and his employer did not take his concerns seriously, he resigned in January 2021.

¶6            The ALJ ruled that Simmons was not eligible for PUA. Although Simmons was clear that his COVID-19 concerns arose in December 2020 and he left his job in January 2021, the ALJ mistakenly placed Simmons's testimony in the context of December 2019 and January 2020. Still, the ALJ accepted the details of Simmons's testimony without finding that they lacked credibility. The ALJ concluded, however, that Simmons "left the employer over his general fears about the COVID-19 pandemic, but not due to the COVID-19 pandemic," and "[t]here was insufficient evidence to establish that the claimant's unemployment was due to the [COVID-19] pandemic." The ALJ thus ruled that Simmons was ineligible for PUA.

¶7            Simmons appealed to the ADES Appeals Board. The Appeals Board summarily adopted the ALJ's findings of fact and conclusions of law and affirmed the denial of eligibility. We granted leave to appeal under A.R.S. § 41-1993(B), appointed *pro bono* counsel for Simmons, and requested briefing on specific issues. The parties have briefed the issues, and we have considered the arguments.

## DISCUSSION

¶8            We begin by correcting an ADES mistake that underlies much of its argument in response to this appeal. ADES asserts that the standard of review for this case is governed by the Judicial Review of Administrative Decisions Act ("JRADA") at A.R.S. §§ 12-901 to -914. But JRADA does not apply here. Under A.R.S. § 12-902(A), JRADA does not apply to the review

of final agency decisions if "a separate act provides for judicial review of the agency decisions and prescribes a definite procedure for the review." Section 41-1993(B) does just that.

**¶9**        And we held many years ago that the JRADA statutes do not apply to cases in which an appeal is taken from a decision of the ADES Appeals Board under A.R.S. § 41-1993(B). *Wallis v. Ariz. Dep't of Econ. Sec.*, 126 Ariz. 582, 584–85 (App. 1980). We reaffirm that JRADA does not apply to appeals from decisions of the ADES Appeals Board and do not address ADES's JRADA arguments further. *See Pima Cnty. Human Rights Comm'n v. Ariz. Dep't of Health Servs.*, 232 Ariz. 177, 182, ¶ 17, n.5 (App. 2013) (The court should not decide issues not required to dispose of an appeal.).

**A.        Simmons Is Eligible for Pandemic Unemployment Assistance Because He Presented Sufficient Evidence of His Eligibility, No Contradicting Evidence Was Presented, and the ALJ Did Not Find His Evidence Lacked Credibility.**

**¶10**        We defer to ADES's findings of fact but review *de novo* whether the Appeals Board properly applied the law to the facts, and we will affirm the decision if it is supported by any reasonable interpretation of the record and substantial evidence. *Figueroa v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 548, 550, ¶ 9 (App. 2011); *Bowman v. Ariz. Dep't of Econ. Sec.*, 182 Ariz. 543, 545 (App. 1995). An "agency abuses its discretion when it misapplies the law or fails to consider the relevant facts." *Rios Moreno v. Ariz. Dep't of Econ. Sec.*, 178 Ariz. 365, 367 (App. 1994). We may substitute our judgment for the agency's conclusions about the legal effect of facts. *Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 224 (App. 1993).

**¶11**        Because unemployment benefits are a remedial measure, the law and facts must be liberally interpreted to grant benefits and narrowly interpreted to deny them. *Munguia v. Dep't Econ. Sec.*, 159 Ariz. 157, 162 (App. 1988); *Rice v. Ariz. Dep't Econ. Sec.*, 183 Ariz. 199, 203 (App. 1995).

**¶12**        In March 2020, Congress enacted the CARES Act, 15 U.S.C. §§ 9001–9141, which included a section for PUA. 15 U.S.C. § 9021. PUA was a temporary program designed to provide limited benefits during 2020 and 2021 to those who did not qualify for regular unemployment benefits. 15 U.S.C. § 9021(c)(1), (a)(3)(A)(i). PUA benefits were available from January 27, 2020, to September 6, 2021. 15 U.S.C. § 9021(c)(1)(A).

**¶13**        PUA was available only to individuals who were ineligible for regular unemployment and self-certified that they were "otherwise able to work and available for work . . . except [they were] unemployed,

partially unemployed, or unable or unavailable to work" for one of eleven enumerated reasons. 15 U.S.C. § 9021(a)(3)(A)(i) and (ii). One of these reasons was that the worker "has to quit his or her job as a direct result of COVID-19." 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(ii).

**¶14** In his application, Simmons self-certified that he was unemployed because of the COVID-19 pandemic and that he quit his job because of COVID-19. Despite mistaking the context of Simmons's testimony, the ALJ concluded that "[t]here was insufficient evidence to establish that [Simmons's] unemployment was due to the [COVID-19] pandemic." The Appeals Board summarily affirmed.

**¶15** Because ADES determined Simmons was monetarily eligible for PUA, the only eligibility requirement at issue on appeal is whether Simmons was unemployed because of one of the enumerated COVID-19-related reasons. The CARES Act defines a "covered individual" as "an individual who provides self-certification that the individual is otherwise able to work and available for work . . . except the individual is unemployed" for one of the enumerated reasons. 15 U.S.C. § 9021(a)(3)(A)(ii)(I).[1] Simmons self-certified in his application that he became "unemployed as a direct result of the COVID-19 Public Health Emergency," and he "quit [his] job because of COVID-19."

**¶16** At the hearing, Simmons would qualify for PUA if he could show he "ha[d] to quit his . . . job as a direct result of COVID-19." 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(ii). "Generally, an employee 'has to quit' within the meaning of [the direct-result subsection] only when ceasing employment is an involuntary decision compelled by" COVID-19. U.S. Dep't of Labor, *Unemployment Insurance Program Letter No. 16-20, Change 4* I-7 (2021). "[G]eneral concerns about exposure to COVID-19" do not qualify as one of the reasons listed in section 2102(a)(3)(A)(ii)(I). U.S. Dep't of Labor, *Unemployment Insurance Program Letter No. 16-20, Change 1* I-10 (2021).

---

[1]     Congress amended the CARES Act to require applicants to "provide[] documentation to substantiate employment or self-employment or the planned commencement of employment or self-employment." Consolidated Appropriations Act, Pub. L. No. 116-260, 134 Stat. 1182, 1960 (2020) (codified as amended at 15 U.S.C. § 9021(a)(3)(A)(iii)). But the Act still only requires an individual to self-certify the reason for the unemployment. 15 U.S.C. § 9021(a)(3)(A)(ii).

¶17　　　　Contrary to ADES's claim, the direct-result subsection cannot be read to apply only where the claimant has contracted COVID-19. To do so would render the subsection superfluous considering subsection (aa), which grants eligibility to individuals unemployed because they were diagnosed with or have symptoms of COVID-19. *See* 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(aa); *see also Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019) (The court must view "the entire text" of a statute and "give meaning . . . to every word and provision so that no word or provision is rendered superfluous.").

¶18　　　　The issue is whether Simmons's evidence shows he was "compelled by" COVID-19 to quit. While not dispositive, we are informed by Arizona law in this area. Generally, if an employee leaves employment for good cause, the employee is entitled to unemployment benefits. A.R.S. § 23-775(1); *Ferguson v. Ariz. Dep't of Econ. Sec.*, 122 Ariz. 290, 292 (App. 1979) (To be entitled to unemployment benefits, an employee must show good cause for voluntarily leaving.). ADES has adopted a "reasonable worker" test to determine whether an employee has good cause for quitting. A.A.C. R6-3-50210(A). The reasonable-worker test includes the notion that an employee should stay with employment "except when this is impossible or impractical." A.A.C. R6-3-50210(C).

¶19　　　　As for leaving because of working conditions, ADES has promulgated regulations describing unreasonable working conditions in general and for various situations. A.A.C. R6-3-50515. The regulations require an employee to address grievances with the employer before quitting unless the attempt would not be feasible. A.A.C. R6-3-50515(A)(4); *see also* A.A.C. R6-3-50210(C)(2) ("A reasonable worker will not quit impulsively," and "[g]ood cause is generally not established unless the worker . . . [a]ttempts to adjust unsatisfactory working conditions.").

¶20　　　　Simmons testified at the Tribunal hearing that he left his job because of COVID-19 concerns at his workplace that his employer refused to address. He explained that his employer had lax mask policies and required sick employees to keep working, creating an unacceptable risk of exposure to the virus in the workplace. The ALJ made no finding that Simmons's testimony was not credible. And ADES did not appear before the ALJ to contest Simmons's explanation, nor does ADES challenge it now. Although the ALJ characterized Simmons's rationale for quitting as "general fears" about COVID-19, Simmons's explanation was, in fact, consistent with "ha[ving] to quit his . . . job as a direct result of COVID-19." The workplace environment Simmons described was characterized by an

amplified risk of exposure to COVID-19 caused by the employer's refusal to change its policies or otherwise address his concerns.

**¶21** Simmons, therefore, is a "covered individual" under the CARES Act because he provided evidence that he was unemployed for an enumerated reason. *See* 15 U.S.C § 9021(a)(3)(A)(ii)(I)(ii) ("the individual has to quit his or her job as a direct result of COVID-19"). As a covered individual, Simmons was entitled to PUA. 15 U.S.C § 9021(b) ("[T]he Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed."). Thus, we hold that the ALJ and the Appeals Board erred by concluding that "[t]here was insufficient evidence to establish that [Simmons's] unemployment was due to the [COVID-19] pandemic" because, under the CARES Act, Simmons's uncontested evidence was sufficient.

**B.   ADES Has Waived the Argument that Simmons Was Not Eligible for Pandemic Unemployment Assistance Because He Had the Ability to Telework.**

**¶22** ADES argues that Simmons was not eligible for PUA benefits because he was available to telework for pay. *See* 15 U.S.C. § 9021(a)(3)(B)(i). But even if it were true, ADES waived the argument by failing to raise or develop the issue at any point during the administrative proceedings.

**¶23** In reaching the initial decision to disqualify Simmons, ADES identified Simmons's ability to telework "as a non-issue." The letter informing Simmons of his disqualification stated that he was ineligible because Simmons's "unemployment [was] not a direct result of the COVID-19 Public Health Emergency." When Simmons appealed, the notice of hearing framed the issue as eligibility for PUA—which, based on the disqualification letter, would only refer to his reason for unemployment. *See* A.R.S. § 23-674(A) (requiring notice of the issues to be addressed at the hearing). ADES did not raise the ability to telework at the Tribunal hearing. And although the ALJ could have explored the ability to telework if it came up during the hearing—and provided Simmons was ensured a meaningful opportunity to present evidence and argument on the matter—the ALJ did not do so in any meaningful way. *See id.*; *see also* A.A.C. R6-3-1503(B)(1) and (2).

**¶24** Because ADES failed to raise the telework issue during the administrative proceedings, it cannot raise that issue against Simmons now. We, therefore, hold that ADES has waived this issue on appeal. *See* A.R.S. § 41-1993(B) ("An issue may not be raised on appeal that has not been raised

in the petition for review before the appeals board."); *Munguia*, 159 Ariz. at 163 (An employer was prohibited from raising an issue for the first time on appeal when the employer failed to argue the issue before the administrative board and the issue "was neither a basis of the appeals board's decision, nor . . . in the petition for review before the appeals board.").

## ATTORNEY'S FEES

**¶25**        Simmons requests attorney's fees under A.R.S. § 12-348 or as a "private attorney general." Simmons is precluded from an award of attorney's fees under A.R.S. § 12-348(H)(1). That subpart of the statute excludes an award of attorney's fees in "an action arising from a proceeding before this state . . . in which the role of this state . . . was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent." *Id.* Because Simmons has only established his eligibility for a "monetary benefit," he is not entitled to an award of attorney's fees. *See Johnson v. Ariz. Dep't of Econ. Sec.*, 247 Ariz. 351, 359, ¶ 27 (App. 2019) (allowing fees for non-monetary benefits). Because Simmons has prevailed in this matter, he is entitled to costs upon compliance with ARCAP 21.

## CONCLUSION

**¶26**        Because Simmons is a covered individual under the CARES Act, we reverse the Appeals Board's decision about eligibility and remand for a determination of the amount of the benefit to award.

