THOMPSON, Judge:
*637 ¶1 This is an administrative law case. The appellant-claimants (hereafter, employees) timely appeal from the decisions of respondent Arizona Department of Economic Security (Department) Appeals Board's (Board) denial of their claims for unemployment benefits. Employees raise one issue: whether the Board erred as a matter of law by denying them benefits for the 2016 summer recess between school terms. We find the Board did err and employees are entitled to unemployment benefits.
JURISDICTION AND STANDARD OF REVIEW
¶2 This court has jurisdiction to review unemployment benefit decisions pursuant to Arizona Revised Statutes (A.R.S.) § 41-1993(B) (2018).[1] We defer to the ALJ's factual findings unless they are arbitrary, capricious, or an abuse of discretion. Munguia v. Dep't of Econ. Sec., 159 Ariz. 157, 158-59, 765 P.2d 559. 560-61 (App. 1988). However, this court draws its own legal conclusions and determines whether the Board properly interpreted the law and applied it to the facts. Avila v. Ariz. Dep't of Econ. Sec. , 160 Ariz. 246, 248, 772 P.2d 600, 602 (App. 1989).
PROCEDURAL AND FACTUAL HISTORY
¶3 Employees work for the respondent employer, Chicanos Por La Causa (the non-profit), an Arizona non-profit corporation, at its childcare centers. The non-profit operates licensed childcare facilities for infants, toddlers and preschool children up to the age of five-years-old. The non-profit's childcare facilities administer federally funded Early Head Start and Migrant and Seasonal Head Start programs as part of its Early Childhood Development program.
¶4 Employee Maria Rosas worked as an infant and toddler teacher and employee Maria Castillo worked as a cook at the childcare center, in Somerton, Arizona. Employee Alicia Solorzano worked as a cook's assistant at the childcare center in Yuma, Arizona.[2] Employee Xochitl Correa worked as an infant and toddler teacher at the childcare center in San Luis, Arizona.[3]
¶5 Before each childcare center closed for the summer break, the employees all received a reasonable assurance of reemployment in the fall. Employees applied for, and were granted, unemployment benefits for the summer break. The non-profit appealed the deputy's determinations, and the department's Appeal Tribunal (Tribunal) held evidentiary hearings.
¶6 Relying on A.R.S. § 23-750(E)(5) (2018), the Tribunal reversed and found employees were not entitled to unemployment benefits. The Tribunal reasoned that the non-profit "provides services to or on behalf of an educational institution," namely the Gadsden, Somerton, and Yuma school districts (collectively, school districts), and that each employee "had reasonable assurance of reemployment for the following school year." For these reasons, it concluded that the employees were subject to the" between and within terms" exclusion to payment of unemployment benefits. Employees appealed to the *638 Board, which adopted the Tribunal's reasoning and affirmed the denial of benefits.
¶7 Employees timely filed applications for appeal to this court. We granted leave to appeal and consolidated these cases for decision.
DISCUSSION
¶8 Employees argue the Board erred in concluding they were not eligible to receive unemployment benefits based on the "between and within terms" exclusion in A.R.S. § 23-750(E)(5). We agree.
¶9 Section 23-750(E) provides in pertinent part:
1. Benefits based on service in an instructional, research, or principal administrative capacity for an educational institution shall not be paid to an individual for any week of unemployment which begins during the period between two successive academic years ... if the individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.
2. Benefits based on service in any other capacity for an educational institution shall not be paid to an individual for any week of unemployment which begins during a period between two successive academic years or terms if the individual performs services in the first of such academic years or terms and if there is reasonable assurance that such individual will perform such services in the second of such academic years or terms ...
* * * *
5. With respect to services described in paragraph 1, 2 or 3 of this subsection, benefits are not payable on the basis of services specified in paragraph 1, 2 or 3 of this subsection to any individual who performed these services while in the employ of an entity that provides these services to or on behalf of an educational institution .
[Emphasis added.]
¶10 Employees assert that they, as individuals employed by the non-profit, did not provide any of the statutorily-excluded services to or on behalf of an educational institution which would make them subject to the "between and within terms" exclusion.
¶11 By virtue of memorandums of understanding (MOUs) between the non-profit and the school districts, the services provided by the non-profit were limited to the screening of three to five-year-old preschool children in their Head Start programs for disabilities.
¶12 Each of the employees worked at a non-profit Head Start program that collaborated with one of the school districts, pursuant to a written MOU. Each MOU contained the following language:
II. PROGRAM MANDATES
A. RESPONSIBILITY OF ... [SCHOOL DISTRICT]
* * * *
2. Ensure that Special Education Services to preschool children with disabilities are provided in accordance with the Individuals with Disabilities Act of 2004 (IDEA)[4] as specified 20 U.S.C. 1400 et seq. and assure that services provided to children with disabilities by other agencies meet appropriate standards.
To maintain federal funding, the non-profit's Head Start programs must make at least ten percent of their enrollment available to children with disabilities who are eligible for special education services under IDEA. 42 U.S.C. 9835(d)(1).
¶13 The MOUs the non-profit entered into with the school districts allowed the school districts to meet their duty under IDEA to identify three to five-year-old preschool children with disabilities and help these children obtain special education in compliance with state and federal law. Based on this expressly stated purpose, the non-profit provided *639 services to or on behalf of an educational institution.
¶14 Paragraphs (1) and (2) of A.R.S. § 23-750(E) prohibit payment of unemployment benefits based on "service in an instructional, research, or principal administrative capacity" or "service in any other capacity" for educational institutions if the employee has "reasonable assurance" of performing these services during the next academic term or year. Paragraph (5)[5] extends the "between and within terms" exclusion to persons not employed by an educational institution, but who perform services covered by paragraphs (1) and (2) "to or on behalf of an educational institution" while employed by a nonprofit organization. Id.
¶15 It is undisputed that employees worked for a nonprofit organization which provided Head Start services to or on behalf of educational institutions. It is undisputed that employees were given reasonable assurance of returning to work the next academic term. However, the remaining element of A.R.S. § 23-750(E)(5) -whether employees individually performed any of the MOU services, i.e., screening three to five-year-old preschool students for disabilities subject to IDEA was not addressed by the Tribunal or the Board. Our determination hinges on that factor.
¶16 Employees Rosas and Correa worked as Head Start infant and toddler teachers. Federal law limits Early Head Start programs to children from birth to three-years-old. It is unlikely that these employees would have been in a position to interact with the students that required screening. In the event of any overlap of three-year-old children between the Early Head Start and other Head Start enrollees, only a maximum of ten percent of the enrolled students would have disabilities. For that reason, both teachers would also serve nondisabled children.
¶17 Regarding employee Castillo, a cook, and employee Solorzano, a cook's assistant, the evidence established that they worked at childcare centers open from 8 a.m. to 3:30 p.m., Monday-Friday. Their job titles indicate that they would serve meals to all the enrolled students, including the ten percent enrollment reserved for students with disabilities. There is no evidence in the record that either employee participated in the IDEA screening of the three to five-year-old students.
¶18 Without additional factual findings regarding each of the employees' duties at the childcare centers, we cannot say that they individually provided any of the services which would preclude them from using their educational wage credits[6] towards their eligibility for unemployment benefits. We reverse the Board's decisions and remand to Department for further proceedings in accordance with this decision.
CONCLUSION
¶19 For the above stated reasons, we reverse the ruling of the Department. The above listed employees are entitled to the benefits for which they applied. Employees' reasonable attorneys' fees, in an amount to be determined upon compliance with ARCAP 21, are awarded.

We cite to the current version of any statute unless the statute was amended after the pertinent events and such amendments would affect the result of this appeal.

The Yuma center provided care for "121 children," in "8 classes: 5 preschool classes, 2 toddler classes and 1 infant class," from "8-3:30 p.m. Monday-Friday for the preschool classrooms."

The San Luis center provided care for "8 classes of preschoolers," at three separate locations, between the "hours of 8-3:30 p.m. Monday-Friday."

IDEA is federal legislation which provides federal funds to states to meet the educational needs of children with disabilities. To receive funding, a state must provide a free appropriate public education to all children with disabilities residing in the state between the ages of three and twenty-one. 20 U.S.C. 1412(a)(1)(A).

Paragraphs (3) and (4) are not germane to this case.

Unemployment benefits are only available to persons who have sufficient wages ("wage credits") during the relevant base period. Generally, as discussed above, educational wage credits will not count towards that that amount.