IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**MARIA ROSAS**,
*Appellant*,

*v.*

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, AN AGENCY,**

and

**CHICANOS POR LA CAUSA INC.,**
*Appellees.*

————————

**MARIA CASTILLO**,
*Appellant*,

*v.*

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, AN AGENCY,**

and

**CHICANOS POR LA CAUSA INC.,**
*Appellees.*

————————

**ALICIA SOLORZANO**,
*Appellant*,

*v.*

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, AN AGENCY,**

and

**CHICANOS POR LA CAUSA INC.,**
*Appellees.*

————————

**XOCHITL CORREA,**
*Appellant,*

*v.*
**ARIZONA DEPARTMENT OF ECONOMIC SECURITY, AN AGENCY,**

and

**CHICANOS POR LA CAUSA INC.,**
*Appellees.*

————————

No.  CV-19-0100-PR
Filed June 19, 2020

Appeal from the A.D.E.S. Appeals Board
No. U-1548356-001 B
No. U-1548603-001 B
No. U-1548481-001 B
No. U-1548369-001 B
**VACATED AND REMANDED**

Opinion of the Court of Appeals, Division One
246 Ariz. 267 (App. 2019)
**VACATED**

————————

COUNSEL:

Mark Brnovich, Arizona Attorney General, Brunn W. Roysden, III, Division Chief, Drew C. Ensign, Section Chief, Civil Appeals, JoAnn Falgout (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Economic Security

Stephen C. Biggs (argued), Smith LC, Mesa, Attorney for Maria Rosas, Maria Castillo, Alicia Solorzano and Xochitl Correa

———————————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES GOULD, LOPEZ, and MONTGOMERY, and JUDGE BREARCLIFFE* joined.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1      This case concerns the interpretation of A.R.S. § 23-750(E)(5), which provides that income earned by "any individual who performed" certain services while employed by an entity that provides such services "to or on behalf of an educational institution" cannot be used to qualify for unemployment for breaks between academic terms if that person is assured reemployment.  We hold that in deciding unemployment eligibility, petitioner Arizona Department of Economic Security ("ADES") must determine whether the employees performed services that the entity provided to or on behalf of the educational institution.

———————————

* Justice James P. Beene has recused himself from this case.  Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Sean E. Brearcliffe, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

**BACKGROUND**

¶2 Plaintiffs/respondents are employees of Chicanos Por La Causa ("CPLC"), a nonprofit corporation, which operates childcare facilities for infants, toddlers, and preschool children up to five years old. CPLC administers federally funded Early Head Start and Migrant Seasonal Head Start programs and, as a result, is subject to extensive federal regulation. *See* 42 U.S.C. § 9831 *et seq.*; 45 C.F.R. § 1301 *et seq.*

¶3 In addition to its Head Start responsibilities, CPLC provides services to help school districts comply with their obligations under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Those services are described in a Memorandum of Understanding ("MOU") with each district, and include recruiting, enrolling, and screening children.

¶4 Plaintiffs Maria Rosas and Xochitl Correa worked for CPLC in its Head Start facilities as infant and toddler teachers. Plaintiffs Maria Castillo and Alicia Solorzano worked, respectively, as a cook and cook's assistant. When the 2016 summer break began, the plaintiffs applied for unemployment insurance benefits from ADES, and an ADES deputy granted benefits to all four, concluding that CPLC does not provide services to or on behalf of an educational institution. *See* A.R.S. § 23-750(E)(5).

¶5 CPLC appealed the determinations to the ADES Appeal Tribunal. It reversed, finding that CPLC "provides services to or on behalf of an educational institution" based on the MOUs. The tribunal also found that plaintiffs had reasonable assurance of reemployment for the following school year. Consequently, the tribunal held that § 23-750(E)(5) prohibited them from using their wages earned at CPLC to qualify for unemployment benefits. Adopting the tribunal's reasoning, the ADES Appeals Board affirmed.

¶6 Plaintiffs appealed to the court of appeals, which concluded they were eligible for unemployment benefits, holding that, although CPLC

4

provides services to or on behalf of an educational institution, there were insufficient facts to support a determination that the plaintiffs performed such services. *Rosas v. Ariz. Dep't of Econ. Sec.*, 246 Ariz. 267 (App. 2019).

¶7          We granted review to determine the proper standards for determining eligibility for unemployment benefits under § 23-750(E)(5), which is a recurring matter of statewide concern. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 41-1993(B).

## DISCUSSION

### A.  Eligibility for Unemployment Benefits

¶8          In an appeal from an administrative decision, we review statutory interpretation de novo. We defer to the agency's fact findings, but its conclusions must be supported by the record. *See Pawn 1st, LLC v. City of Phoenix*, 242 Ariz. 547, 551 ¶ 9 (2017); *see also* A.R.S. § 12-910(E).

¶9          Although this case involves interpretation of a state statute, it is informed on multiple levels by federal law. In order to qualify for federal unemployment support, Arizona unemployment provisions must conform to the Federal Unemployment Tax Act. *See* 26 U.S.C. § 3304(a). Through 26 U.S.C. § 3304(a)(6)(A)(v), Congress authorized states to adopt provisions excluding employees performing certain services for educational institutions from unemployment benefits during the break between academic terms if they are assured continuation of employment. This is commonly referred to as the "between and within terms" exception to unemployment benefit eligibility.

¶10          Arizona adopted this exception in A.R.S. § 23-750(E). Section 23-750(E)(1) provides that "[b]enefits based on service in an instructional, research or principal administrative capacity for an educational institution" shall not be paid between and within terms under specified circumstances "if there is a contract or a reasonable assurance that the individual will perform services in any such capacity" in the next term. Section 23-

750(E)(2) extends ineligibility "based on service in any other capacity for an educational institution."

¶11        Section 23-750(E)(5), at issue here, pertains to individuals who are not directly employed by educational institutions.  It states that "benefits are not payable on the basis of services specified in paragraph 1, 2 or 3 of this subsection to any individual who performed these services while in the employ of an entity that provides these services to or on behalf of an educational institution."

¶12        Although they provide early learning services, Head Start providers like CPLC are not educational institutions for purposes of federal or state unemployment statutes.  U.S. Dep't of Labor, Unemployment Insurance Program Letter ("UIPL") No. 41-97 (Sept. 30, 1997).  Absent the criteria set forth in § 23-750(E)(5), CPLC's employees would qualify for unemployment benefits.

¶13        "Our task in statutory construction is to effectuate the text if it is clear and unambiguous."  *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018).  Words should be construed in their overall statutory context.  *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).  If the statute's text yields different reasonable meanings, we consider secondary interpretation methods, such as the statute's subject matter, historical background, effect and consequences, and spirit and purpose.  *State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017).

¶14        On its face, § 23-750(E)(5) encompasses two discrete criteria. To be excluded from unemployment eligibility, the claimant must be an individual "who performed" services specified in §§ 23-750(E)(1)–(2),[1] "while in the employ of an entity that provides these services to or on behalf of an educational institution."  Those "services," in turn, are "service in an

---

[1] Although the provision also references subsection (3), it is not relevant here.

instructional, research or principal administrative capacity," § 23-750(E)(1), or "service in any other capacity," § 23-750(E)(2).

¶15         The parties and the adjudicators below construed this language in sharply divergent ways.  The plaintiffs, whose position was embraced by the court of appeals, argue that they are not excluded from unemployment benefits because they perform no services whatsoever for the school district.  The teachers, they assert, do not serve students above age three who would be eligible for IDEA services from the district.  The cook and assistant cook provide meals for the students, but as part of CPLC's normal Head Start services, not on behalf of a school district.

¶16         The appeal tribunal and appeals board ruled, by contrast, that so long as the employer provides services to an educational institution, anyone who works for the employer, even if in a capacity that does not serve an educational institution, and whose continued employment is assured, is subject to the unemployment benefit exception.

¶17         In interpreting a statute, we must whenever possible give meaning to every word and provision.  *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019).  The language in § 23-750(E)(5) is quite clear that the employee must be an individual "who performed" the specified services.  Thus, the conclusion of the appeal tribunal and appeals board is untenable.  In order to be disqualified from unemployment benefits under the statute, (1) the employer must have provided services to or on behalf of an educational institution, (2) the employee must have "performed" those services, and (3) the employee must have received assurance of employment in the following year.

¶18         The appeals board erroneously reduced those issues to two: whether the employing entity provided services to or on behalf of an educational institution and whether the employees were given assurances of reemployment.  The board essentially ruled as a matter of law that, if CPLC provided *any* services to or on behalf of the districts, then *all* CPLC employees were ineligible for unemployment benefits so long as they were

assured of reemployment. Focusing on the MOUs, the board concluded that CPLC provided services to the school districts. But it never determined exactly what services CPLC provided to the school districts or whether the employees performed them, which is necessary to determine eligibility under the statute.

¶19 The MOUs are not contracts specifying services. Rather, they memorialize the responsibilities of CPLC under the Head Start requirements, the obligations of the school districts under the IDEA, and the services that CPLC will provide to assist the districts in meeting those obligations. CPLC's preexisting obligations under the Head Start programs, or other services it chooses to provide to children independent of its relationship with the school districts, are not services to or on behalf of an educational institution. The Department of Labor has explained that actions "on behalf of" educational institutions are limited to actions taken "as the agent of" or "on the part of" the institution. UIPL No. 41-83 (Sept. 13, 1983). CPLC is not acting as an agent of or on the part of school districts when fulfilling its own independent obligations. *See* Restatement (Third) of Agency § 1.01 cmt. c (Am. Law. Inst. 2006) (noting right of principal to control agent and requiring that the "agent consent[] to act on behalf of the principal").

¶20 The Department of Labor construes services "provided to" an educational institution more broadly than "on behalf of," but only to encompass services that "give some benefit or support to the institution." UIPL No. 41-83. In the case of CPLC, those would include only services that support or benefit the school district's fulfillment of its IDEA obligations. The MOUs specify that CPLC shall screen all enrolled children for potential health and developmental problems and refer children found to be at-risk to the school districts. The MOUs suggest other possible services, such as transportation from the district preschool to CPLC. But no attempt was made in the administrative process to determine the services CPLC provides to or on behalf of the districts.

¶21 Without such an analysis, we cannot know whether the plaintiffs "performed these services," a determination the appeals board

deemed unnecessary, but which § 23-750(E)(5) requires. The appeals board observed in passing that the Department of Labor even considers crossing guards, bus drivers, and cafeteria workers among those who might provide services to an educational institution. But the Department of Labor is quite specific that those workers must be providing services directly to the educational institution, such as city transportation workers assigned to drive school buses or nonprofit cafeteria workers providing lunches to a district's students. UIPL No. 41-83. The Department of Labor interpretation strongly supports our view that § 23-750(E)(5) applies to plaintiffs only if they performed services for CPLC that it supplied to the school districts. No showing was made here connecting the plaintiffs' work to services provided by CPLC to the school districts, which the statute's plain language requires.

¶22 The court of appeals correctly found that § 23-750(E)(5) requires determining "whether employees individually performed" any of the services provided by CPLC to the school districts. *Rosas*, 246 Ariz. at 270 ¶ 15. The court erred, however, by holding that all plaintiffs were eligible for unemployment benefits absent such evidence in the record. The court concluded that under the MOUs, "the services provided by the non-profit were limited to the screening of three to five-year-old preschool children in their Head Start programs for disabilities." *Id.* at 269 ¶ 11. But it is not clear that the services are so limited; ADES argues, for instance, that they include recruitment, which is arguably supported by the MOUs. Regardless, because the ADES Appeals Board erroneously failed to consider whether the employees performed services that CPLC was providing to or on behalf of the school district, the plaintiffs had no occasion or opportunity to present evidence on that central issue.

¶23 But the court went on to speculate that the plaintiffs did not engage in such services. Because Rosas and Correa were infant and toddler teachers, and Early Head Start programs are limited to children from birth to three years, the court concluded that it was "unlikely that these employees would have been in a position to interact with the students that required screening." *Id.* at 270 ¶ 16. That may be a correct assumption, but it is unsupported by formal factual findings, and the record on that point is unclear.

9

**¶24**        The court also observed that, even if the teachers engaged in screening services, they "*would also* serve nondisabled children." *Id.* But that is not the proper inquiry as § 23-750(E)(5) merely requires that the employees perform services that their employer provides to or on behalf of the educational institution in order to be subject to the benefit exclusion. It need not be all they do.

**¶25**        Accordingly, we remand to ADES to determine whether Rosas and Correa are eligible for unemployment benefits. On remand, the agency must determine whether the plaintiffs performed services for CPLC that it, in turn, provided to or on behalf of the school districts. If they did, owing to the assurance of reemployment, they are ineligible for unemployment benefits under § 23-750(E)(5). If they did not perform such services, they are entitled to unemployment benefits.

**¶26**        As to Castillo and Solorzano, the court of appeals found "no evidence in the record that either employee participated in the IDEA screening of the three to five-year-old students." *Id.* ¶ 17. Although we do not agree that CPLC's services to or on behalf of the school districts were limited to screening under the MOUs, we agree that no evidence links the cooking staff's activities to any conceivable service CPLC agreed to provide. The best ADES could offer to support its position in this regard is that "[a]lthough the MOUs did not specifically require CPLC to provide meals for the children, any reasonable daycare or preschool would do so as part of its program for young children who would be at the center for such a long time." ADES is surely correct in that assertion, but that fact establishes only that CPLC provided meals to children, not that CPLC did so on the school districts' behalf. Meal services were unrelated to CPLC's recruiting, enrolling, and screening services provided to the school districts, as set forth in the MOUs. Accordingly, we affirm the ADES deputy's initial determination and the court of appeals' conclusion that Castillo and Solorzano were entitled to benefits.

### B. Attorney Fees

**¶27**        The court of appeals awarded attorney fees to plaintiffs. Arizona Revised Statutes § 12-348(H)(1) precludes attorney fees against the state where its role "was to determine the eligibility or entitlement of an individual to a monetary benefit." That is the role ADES played here. Accordingly, we reverse the attorney fee award.

### CONCLUSION

**¶28**        We vacate the opinion of the court of appeals and remand the case to ADES to award unemployment benefits to plaintiffs Castillo and Solorzano and for further proceedings to resolve the claims of plaintiffs Rosas and Correa in accordance with this opinion.