IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

A.C., *Appellant,*

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY,
an agency, and,

DDD ARIZONA DES, *Appellee*s.

No. 1 CA-UB 19-0063
FILED 07-21-2020

---

Appeal from the A.D.E.S. Appeals Board
No. P-1595470-001-B
The Honorable D. Whiting, Administrative Law Judge

**VACATED AND REMANDED**

---

COUNSEL

Hofmeyr Law PLLC, Tucson
By Adriane J. Hofmeyr
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellees*

## OPINION

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

**T H U M M A**, Judge:

**¶1** A.C. appeals from a decision of the Arizona Department of Economic Security (ADES) Appeals Board terminating his developmental disability services. Because the Board incorrectly allocated the burden of proof, and because ADES failed to present any evidence about relevant substantial functional limitations and failed to assist A.C. as required, the Board's decision is vacated and this matter is remanded for further administrative proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

**¶2** A.C. was born in December 2011 with significant special needs. He has autism, which ADES concedes is a developmental disability that is likely to continue indefinitely. A.C. cannot dress or wash himself. He cannot use the bathroom, brush his teeth or comb his hair without assistance. He has severe verbal communication limitations. He is in a self-contained classroom, has erratic and sometimes physically aggressive behavior, and cannot ride a school bus on his own. As a result of his autism diagnosis and limitations, ADES' Department of Developmental Disabilities (DDD) has provided A.C. services for several years.

**¶3** The standards for DDD services change when an individual turns six years old. In December 2017, just before A.C.'s sixth birthday, DDD sent a Notice of Intended Action to A.C.'s grandfather and legal guardian. This notice of termination stated DDD "intends to take the following action: . . . Terminate eligibility effective date: 1/7/2018." The basis for this notice of termination was that DDD

> reviewed the records provided to us, and they do not show that you have . . . [s]ubstantial functional limitations in at least three (3) of the following major life activities resulting from a DDD qualifying diagnosis: self-care, receptive and expressive language, learning, mobility,

self-direction, capacity for independent living,
or economic self-sufficiency.

This notice of termination cited a section of the Arizona Revised Statutes
(A.R.S.) and a regulation in the Arizona Administrative Code (A.A.C.) for
definitions. The notice of termination also informed A.C. that he could seek
administrative review of the intended termination.

¶4        Although A.C. timely sought administrative review, in May
2018, DDD denied his challenge. Much of the nine-page denial was
attributed to DDD Clinical Psychologist Dr. Jennifer Gray's review of
"available records" provided to her by DDD. Dr. Gray reviewed three
developmental pediatric clinical notes; a March 2017 individualized
educational plan (IEP); a 2017 multidisciplinary evaluation team report;
and an undated letter from a school psychiatrist, which DDD received in
December 2017. Although DDD had received a March 2018 IEP, Dr. Gray
did not review that plan. Dr. Gray acknowledged that A.C. has a qualifying
diagnosis of autism. Based upon her document review, however, Dr. Gray
concluded there was "no evidence of substantial functional limitations"
(SFLs) attributable to that diagnosis. This May 2018 administrative decision
attached, without explanation, 12 pages containing excerpts from two
statutes, a regulation and a "DES/DDD Eligibility Manual."

¶5        A.C. timely appealed this administrative decision, and an
ADES administrative law judge (ALJ) set an evidentiary hearing. The
hearing was held in September 2018, to allow for the results of an August
2018 appointment A.C. had with his doctor. At the hearing, the ALJ noted
the only disputed issue was whether A.C. had SFLs "in at least three of the
seven major life activities attributable to autism." Dr. Gray and A.C.'s
grandfather testified.

¶6        Dr. Gray explained an SFL "means a limitation so severe . . .
that extraordinary assistance from other people, programs, services, or
mechanical devices is required to assist the person in . . . performing these
major life activities." Dr. Gray testified that, to substantiate an SFL, DDD
would only consider test results; she did not state whether any other types
of evidence could support an SFL finding. She testified about the testing to
substantiate an SFL, including that the type of required testing depended
on the SFL in question. For A.C., she focused on two tests she deemed

acceptable: "the Vineland," Third Edition, and "the ABAS," an acronym for "Adaptive Behavior Assessment System."[1]

¶7 Although DDD is required to focus on an individual's current functionality, Dr. Gray's testimony largely addressed dated information. For example, Dr. Gray concluded A.C. could not have an SFL in receptive and expressive language because he was evaluated for a Spanish immersion program, which involved language skills. By the time of the hearing, however, that evaluation was almost 18 months old. As another example, although the May 2018 administrative decision stated DDD had received a March 2018 IEP, Dr. Gray testified that A.C.'s most recent IEP was from March 2017. The March 2018 IEP, however, noted A.C. was no longer in the Spanish immersion program and had been moved to a self-contained classroom.

¶8 Dr. Gray testified that three of the seven SFLs that regulations required DDD to assess did not apply to six-year-olds. More specifically, notwithstanding those regulations and the December 2017 notice of termination, Dr. Gray testified that self-direction, capacity for independent living, and economic self-sufficiency SFLs did not apply to A.C. After considering the remaining four SFLs, Dr. Gray testified that A.C. did not have three or more SFLs attributable to his autism diagnosis. As a result, Dr. Gray concluded DDD properly was terminating benefits.

¶9 A.C.'s grandfather testified that A.C. had not been successful in the Spanish immersion program and had been moved to a self-contained classroom, as reflected in the March 2018 IEP. He testified that A.C. is very difficult to understand and gets frustrated when he is unable to communicate and be understood, which occurs frequently. Addressing self-care, A.C.'s grandfather testified that A.C. struggles with toileting, is unable to dress himself or brush his teeth and is unable to wash his face or comb his hair. He asked that a decision on A.C.'s services be deferred until after an "ADOS test" (apparently an Autism Diagnostic Observation Schedule) was performed. A.C.'s grandfather also expressed frustration, adding DDD "dropped the ball somewhere because from what I've been told they changed all the rules and [did] not inform anyone until long after they changed the rules."

---

[1] About a month before the hearing, however, DDD amended its regulations so that it no longer named "the ABAS" as an acceptable test to show an SFL. *See* A.A.C. R6-6-303(C)(1)-(2) (effective Aug. 24, 2018).

¶10 After the hearing, the ALJ affirmed DDD's decision to terminate services. Noting DDD was seeking to terminate services, the ALJ concluded DDD had the burden of proof to show A.C. was no longer eligible for services. The ALJ found that A.C. had an SFL in self-care, but that DDD had shown he does not have any other SFLs, and further found that economic self-sufficiency was not applicable.

¶11 A.C. timely appealed the ALJ's decision to the ADES Appeals Board. In rejecting his appeal, the Board found the ALJ made an error of law in finding DDD had the burden of proof. Although acknowledging DDD was seeking to terminate services for A.C., the Board found it would not be "either fair or convenient" for DDD to have the burden to show A.C. was no longer eligible for services. Instead, the Board adopted a two-phase shifting burden of proof: first DDD was required to show a change in circumstances that would remove any presumption of eligibility, then the client must prove eligibility for DDD services. As applied, the Board required DDD to prove that A.C. had turned six years old and A.C. then had the burden to show he was eligible for DDD services.

¶12 After considering A.C.'s March 2018 IEP, the Board found that A.C. had an SFL in learning, concluding the ALJ erred in finding he did not have an SFL in learning based on the March 2017 IEP. Because the Board adopted a two-phase shifting burden of proof, it then concluded the ALJ erred in finding that A.C. had an SFL in self-care. Although the Board recognized that A.C. is autistic and proved an SFL in learning, the Board found he failed in his burden of proof because he did not show SFLs in at least three of the seven major life areas.

¶13 This court has jurisdiction over A.C.'s timely appeal of the Board's decision pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 41-1993(B) (2020).[2]

## DISCUSSION

¶14 "This court must accept the Board's factual findings unless they are arbitrary, capricious, or an abuse of discretion. . . . The Board's legal conclusions, however, are not binding on this court, and we review de novo whether the Board properly interpreted the law." *A.W. v. Ariz. Dep't of Econ. Sec.*, 247 Ariz. 249, 253 ¶ 15 (App. 2019) (quoting *Rice v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 199, 201 (App. 1995)).

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶15        A person with a developmental disability may seek DDD therapeutic services. *See* A.R.S. § 36-559(A). DDD regulations establish eligibility to qualify for those services. *See* A.A.C. R6-6-302. For children, DDD distinguishes eligibility based on age. Children less than six years of age must have a qualifying diagnosis (which includes autism) *or* be at risk of being diagnosed with a developmental disability. A.A.C. R6-6-302(G). Children six and older must (1) have a qualifying diagnosis (which includes autism) *and* (2) "[h]ave functional limitations in three or more [of seven] areas of major life activities as described in R6-6-303(C)." A.A.C. R6-6-302(H)(1)-(2).

¶16        A.C. began receiving DDD services when he was four years old. Neither party disputes that A.C. has a qualifying diagnosis of autism. Instead, the parties dispute whether A.C., who is now eight years old, has SFLs in three or more major life activities.

¶17        The seven SFLs are: (1) self-care; (2) receptive and expressive language; (3) learning; (4) mobility; (5) self-direction; (6) capacity for independent living; and (7) economic self-sufficiency. A.A.C. R6-6-303(C)(1)-(7). The Board concluded A.C. has an SFL in learning, a finding not challenged on appeal. Additionally, A.C. concedes that he does not have an SFL in mobility. Thus, the issue is whether A.C. has SFLs in two of the five remaining SFLs identified in the regulation and as reflected in the December 2017 notice of termination. Resolving that issue first involves determining whether DDD or A.C., had the burden of proof.

## I.    DDD Had the Burden of Proof.

¶18        ADES originally admitted that DDD had the burden to show A.C. was no longer eligible to receive DDD services, citing *Harvest v. Craig*, 195 Ariz. 521 (App. 1999). More specifically, ADES told the ALJ that, because it was seeking to terminate services, "DDD has the burden of proving that [A.C.] is no longer eligible for DDD services." Given this concession, the ALJ found that, in seeking to terminate services, DDD had the burden to prove A.C. was no longer eligible for services. The Board, however, adopted the shifting burden of proof described above. Notwithstanding ADES' concession that DDD had the burden of proof, ADES now argues the Board's shifting burden of proof was correct, while A.C. argues that the ALJ properly determined DDD had the burden of proof. The allocation of the burden of proof is an issue of law subject to de novo review by this court. *See A.W.*, 247 Ariz. at 253 ¶ 15; *see also Aranda v. Cardenas*, 215 Ariz. 210, 215 ¶ 16 (App. 2007).

¶19            In addressing the burden of proof, the Board found that DDD was attempting to change the status quo by seeking to terminate services. That, the Board stated, would strongly favor allocating the burden of proof to DDD under *Harvest*, 195 Ariz. at 524 ¶¶ 14-15.[3] The Board, however, found it would not "be either fair or convenient" for DDD to have the burden to prove A.C. was no longer eligible for DDD benefits, reasoning:

> A DDD recipient has access to and control over all of the evidence relevant to these factual matters and the Department's ability to produce any of the relevant evidence is at best quite limited. In fact, if the Department had the burden, a DDD recipient could easily prevail by simply refusing to supply to the Department any information, reports or other evidence or by supplying only the evidence that supports his eligibility. This is obviously an unacceptable result.

This reasoning caused the Board to adopt the shifting burden of proof.

¶20            ADES contends that, because A.C. began receiving services pursuant to the under-six standards, the presumption was that his services terminated when he turned six, requiring A.C. to prove he satisfied the over-six standards. But that is not what the law provides. "Although a statute governing termination of DDD services discusses automatic termination when a beneficiary turns 18 years old, A.R.S. § 36-566(B)-(C), no comparable provisions exist that govern termination when a beneficiary turns six." *A.W.*, 247 Ariz. at 253 ¶ 18. Indeed, it is undisputed that A.C. continued to receive DDD services after he turned six. *See also* A.R.S. § 36-565(C).

---

[3] The Board also cited *Patti v. Schweiker*, 669 F.2d 582 (9th Cir. 1982), which largely addressed when a federal administrative disability decision is binding for supplemental security disability benefits under federal law. The Board's decision, however, is one of Arizona law, implicating the analysis in *Harvest v. Craig*.

¶21        "[W]hen a statute grants a right or benefit, a court looks first to the statute to determine whether the legislative body has allocated the burden of proving entitlement to the right or benefit." *Harvest*, 195 Ariz. at 524 ¶ 14. ADES argues the Board's shifting burden of proof is supported "by the relevant statutes' plain language." But in making this argument, ADES cites no statute setting forth the Board's shifting burden of proof. Indeed, contrary to ADES' argument, the statutes and regulations are silent on who has the burden of proof to show services should terminate after a child turns six. *See* A.R.S. 36-551 to -563; A.A.C. R6-6-302 to -303; *accord A.W.*, 247 Ariz. at 253 ¶ 18. Even more significantly, no statute or regulation suggests anything like the shifting burden of proof the Board adopted, and that ADES urges this court to adopt on appeal. The most guidance the regulations offer is that in hearings on DDD services determinations, "[t]he Department has the initial burden of going forward with presentation of evidence." A.A.C. R6-6-2212(C). Although not dispositive, this regulation suggests that DDD (not A.C.) had the burden of proof.

¶22        Given this silence in the applicable statutes and regulations, it is appropriate to "resort to other principles of construction," focusing "on what is fair, what is convenient, who is seeking to change the status quo, and policy considerations such as those disfavoring certain defenses." *Harvest*, 195 Ariz. at 524 ¶ 14. By issuing a notice of termination expressing an intent to terminate A.C.'s services, DDD is seeking to change the status quo. That DDD is seeking to change the status quo is an important factor weighing in favor of allocating to DDD the burden of proof. *Id.* at 524 ¶ 14.

¶23        ADES argues that imposing the burden on DDD is unfair and inconvenient because A.C. has greater access to relevant documents. DDD's own obligations, however, blunt that argument. By statute, DDD is required to evaluate the services being provided to a client "at six-month intervals." A.R.S. § 36-565(A); *accord* A.A.C. R6-6-604. For that requirement to have meaning, DDD would need to secure and consider relevant documents in these periodic evaluations. Given this obligation to evaluate services at least twice a year, and the gathering of such documents by DDD necessary for those evaluations to have meaning, it is neither unfair nor inconvenient to place the burden of proof on DDD. *See Harvest*, 195 Ariz. at 524 ¶ 14.

¶24        Along with these obligations, DDD's regulations require it to go further to assist clients like A.C. DDD is obligated to "assign a case manager" for A.C. who, in turn, is obligated to "assist the client and the client's family in all aspects of the developmental disabilities service delivery system," including "[t]he pursuit of evaluations and professional

assessments necessary to substantiate the need for services" and "[t]he collection and analysis of information regarding eligibility." A.A.C. R6-6-601(1)-(2); *see also* A.A.C. R6-6-604 (requiring case manager participation in six-month reviews). Given that a DDD case manager is already required to undertake these efforts for A.C. (including gathering relevant documents), DDD should already have these materials when seeking to terminate services. These required obligations by the DDD case manager further show that it is not unfair or inconvenient to place the burden of proof on DDD based on access to relevant documents. *See Harvest*, 195 Ariz. at 524 ¶ 14.

¶25          ADES argues a client should have the burden of proof because a client could withhold unfavorable information. If, however, DDD is evaluating services every six months and the case manager is actively assisting the client in gathering such information, as the regulations required, such efforts should negate any concern that a client could withhold unfavorable information. Given the assistance DDD is required to provide, as well as its authority to obtain independent professional evaluations, concerns about withholding unfavorable information are both unfounded and fail to show that the client should have the burden of proof when DDD is seeking to terminate services. *See id.*; *A.W.*, 247 Ariz. at 253 ¶ 16, 255 ¶ 25.

¶26          Other policy considerations, including those "disfavoring certain defenses," are fairly considered when allocating the burden of proof. *See Harvest*, 195 Ariz. at 524 ¶ 14. ADES, however, has identified no such defenses. Nor has ADES identified other policy considerations that would favor allocating the burden of proof to A.C. To the contrary, DDD is required to provide meaningful notice to beneficiaries so that they can act and respond accordingly. *See A.W.*, 247 Ariz. at 253-54 ¶ 19 (citing cases). Here, not only did the statutes and regulations fail to notify A.C. that ADES would allocate to him the burden of proof, ADES itself admitted to the ALJ that DDD (not A.C.) had the burden of proof. Such an admission is the opposite of providing meaningful notice to the contrary.

¶27          For all these reasons, applying the *Harvest* factors, in seeking to terminate services, DDD had the burden to prove that A.C. was no longer eligible to receive services. Because the Board misapplied the burden of proof, the question then becomes whether the Board's error was harmless.

## II. The Misallocation of the Burden of Proof Was Not Harmless Error.

¶28 Notwithstanding the error in misapplying the burden of proof, to be harmless, the Board's conclusion to terminate services would need to be based upon substantial evidence on the record as a whole. *Cooke v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 141, 143 ¶ 10 (App. 2013). The record presented, however, does not support such a conclusion. DDD failed to present any evidence on three of the seven SFLs specified in A.A.C. R6-303(C). Moreover, the record does not indicate that A.C. received assistance from a case manager as required by A.A.C. R6-601.

### A. Consideration of A.C.'s Substantial Functional Limitations.

¶29 The Board found A.C. had an SFL in learning. Although concluding the ALJ erred in finding A.C. had an SFL in self-care, that conclusion was erroneous given that DDD had the burden of proof. The question then becomes whether, when applying the proper standard, the Board properly determined that A.C. did not have one additional SFL, recognizing that at least three SFLs are required.

¶30 DDD's own regulations require that, when evaluating SFLs in self-direction, capacity for independent living and economic self-sufficiency "[f]or children under the age of 18, [DDD] *shall compare* the child's abilities in this area with *age and developmentally appropriate abilities* based on the current guidelines of Centers for Disease Control and Prevention and American Academy of Pediatrics." A.A.C. R6-6-303(C)(5)(b), (6)(b) & (7)(b) (emphasis added). The record shows DDD failed to do so. Instead, Dr. Gray testified that the SFLs of self-direction, capacity for independent living, and economic self-sufficiency are "not attributable to a six-year-old." That evidence is contrary to what the law requires.

¶31 ADES claims that these three SFLs cannot be assessed for A.C. More specifically, ADES argues that comparing A.C. to other six-year-olds "makes no sense." But that comparison is *precisely* what the regulations require. ADES provides no authority to the contrary.

¶32 The only evidence presented addressing the SFL in self-direction was Dr. Gray's reference to the speech and language pathologist's note, which indicated A.C. could express his wants and needs. From that sentence, Dr. Gray concluded A.C. did not have an SFL in self-direction. However, neither Dr. Gray, nor the sentence she relied upon, compared A.C.'s abilities to the current guidelines of the Centers for Disease Control

and Prevention and the American Academy of Pediatrics, as was required. A.A.C. R6-6-303(C)(5).

## B.      DDD's Failure to Provide Required Assistance.

¶33      The record shows DDD failed to present any evidence addressing three SFLs, and provided inadequate evidence addressing the SFL in self-direction. In addition, the record shows DDD did not discharge its obligation to assist A.C. and his family "in all aspects of the [DDD] service delivery system," including through the assistance of an assigned case manager. *A.W.*, 247 Ariz. at 255 ¶ 25 (quoting A.A.C. R6-6-601).

¶34      ADES argues A.C. waived the sufficiency of his case manager's assistance by failing to raise the argument administratively. However, this argument could not have been raised earlier. Until the Board's decision, the burden of proof had been allocated to and accepted by DDD to show that A.C. was no longer eligible for services. Only in its decision did the Board reallocate the burden to A.C., thereby implicating the sufficiency of his case manager's assistance. Accordingly, A.C. did not waive the sufficiency of his case manager's assistance.

¶35      DDD's lack of assistance is evidenced by Dr. Gray's observation "that there's some confusion about what is needed . . . for DDD services." A.C.'s grandfather expressed confusion about what was required and testified that DDD "dropped the ball" in its undertaking. This and other confusion in the record about required testing, assessments and documentation further show DDD did not discharge its obligations to assist A.C. and his family. On this record, the Board's error in misapplying the burden of proof was not harmless.

## III.    Attorneys' Fees on Appeal.

¶36      A.C. seeks his attorneys' fees and costs on appeal pursuant to A.R.S. § 12-348(A)(2), while ADES argues A.C. is prohibited from receiving a fee award under A.R.S. § 12-348(H)(1) (precluding an award of fees in an action where the role of the state "was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent"). This court has rejected the argument that DDD's role was to determine eligibility or entitlement to a monetary benefit or its equivalent. Because the services that DDD is seeking to terminate "are not merely a monetary benefit or its equivalent," A.R.S. §12-348(H)(1) does not apply. *See Johnson v. Ariz. Dep't of Econ. Sec.*, 247 Ariz. 351, 359 ¶¶ 27-29 (App. 2019). Accordingly, and having considered the request, A.C. is awarded his reasonable attorneys'

fees and costs on appeal contingent upon his compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶**37** The Board's decision is vacated, and this matter is remanded for further administrative proceedings consistent with this opinion.

