NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ARTHUR JOHNSEN, *Appellant*,

*v.*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency,

*and*

DES/DDD, *Appellees*.

No. 1 CA-UB 21-0236
FILED 6-29-2023

---

Appeal from the A.D.E.S. Appeals Board
No. P-1689818-001-B

**VACATED AND REMANDED**

---

COUNSEL

Arizona Center for Disability Law, Phoenix
By Meaghan K. Kramer
*Counsel for Appellant*

Richards & Moskowitz PLC, Phoenix
By Natalya Ter-Grigoryan, William A. Richards
*Counsel for Appellees*

------------------------------

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Vice Chief Judge David B. Gass and Judge Maurice Portley[1] joined.

------------------------------

**F U R U Y A**, Judge:

¶1        Arthur Johnsen, a man in his fifties and recently diagnosed with autism spectrum disorder ("ASD"), appeals the Arizona Department of Economic Security's ("ADES") Department of Developmental Disabilities ("DDD") denial of his application for case management services. After the ADES Appeals Board (the "Board") affirmed the denial, we granted his application for appeal to address whether the Board used the correct standard in rejecting the validity of his diagnosis and whether the record contains evidence to support the findings adopted by the Board. We hold that the Board erred in rejecting Arthur's ASD diagnosis and vacate and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2        Before 2018, Arthur was unable to hold a job and had been living in Michigan with his parents and family members when not incarcerated. In 2018, he was hospitalized for three weeks at an acute care psychiatric facility that diagnosed him with paranoid schizophrenia. He received several court orders for mental health treatment. His legal guardian and brother Roger Johnsen decided to bring Arthur to Arizona, where he has received benefits as a person with Serious Mental Illness and has been treated for schizophrenia since 2019. He has resided in a residential facility for several years. However, in August 2020 after the facility determined that Arthur did not need the type of care it provided, Roger applied for DDD eligibility.

¶3        To support the application, Roger provided a comprehensive psychological evaluation of Arthur performed by licensed clinical psychologist Kathleen Chandler, Ph.D., in February 2020. Dr. Chandler

------------------------------

[1]        The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

obtained a history, reviewed medical records, gathered information, and administered psychological tests. She concluded that Arthur has ASD.

¶4        Arthur based his DDD application on Dr. Chandler's evaluation and diagnosis. After DDD reviewed the evaluation, commented on perceived deficiencies, and continued denying that Arthur was eligible, Dr. Chandler issued a seven-page addendum addressing DDD's comments. In particular, she addressed six criticisms of her report, including Arthur's diagnosis of schizophrenia, significant events at birth and in childhood, and the effects of psychotropic medications. Dr. Chandler affirmed her diagnosis of ASD, but DDD maintained its denial of eligibility. During this time, Arthur's psychiatric providers discontinued his diagnosis of schizophrenia in favor of ASD.

¶5        This evidence was then presented to an administrative law judge ("ALJ"). The record that the ALJ considered included Dr. Chandler's evaluation and diagnosis as supplemented by her addendum addressing DDD's criticisms. At the hearing, Arthur called Dr. Chandler to testify in support of Arthur's ASD diagnosis. He also called licensed Psychiatric Nurse Practitioner Justin Egoville, who has been treating Arthur since 2018, and Dr. Steven Bupp, the psychiatrist who supervises Nurse Practitioner Egoville. DDD called one witness: licensed psychologist Dr. Kelly Donohue, DDD's Medical Record Review Consultant, whose review and criticisms of Dr. Chandler's evaluation form the basis for DDD's denial. Dr. Donohue did not evaluate Arthur; she reviewed records only.

¶6        The ALJ concluded Dr. Chandler's evaluation was invalid, finding that Dr. Chandler had not considered schizophrenia, had not conducted a "differential analysis," and had not considered the effects of the medication prescribed by Arthur's psychiatric provider. She also found Roger was a biased witness and determined the information Dr. Chandler procured from him for use in her evaluation was unreliable. The ALJ further found that Dr. Chandler concluded Arthur does not have schizophrenia. Without a valid evaluation, the ALJ reasoned she could not find Arthur had ASD and, thus, found he did not meet eligibility as to diagnosis.

¶7        Upon administrative review, the Board adopted the ALJ's findings and conclusions, stating there was "no material error" in the ALJ's decision. Although adopting the ALJ's decision, the Board provided substantial commentary on many of the issues raised by the parties. For example, the Board commented that "failure to make a differential diagnosis" does not invalidate a psychological report but affects the weight

to be given it. The Board also noted Dr. Chandler "did not explain how or why she ruled out schizophrenia." The Board characterized the ALJ's conclusion that Dr. Chandler's evaluation was invalid as giving "less weight" to the evaluation "than it might otherwise be given." Thus, the Board denied the application. This timely appeal followed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 41-1993(B).

¶8            On appeal, Arthur argues the Board used an incorrect standard in determining whether Dr. Chandler's evaluation and diagnosis were invalid. We also address whether substantial evidence supports the Board's findings on the manifestation of symptoms before age 18 and findings on Arthur's current functional limitations.

## DISCUSSION

¶9            We will reverse a decision of the Board when it is arbitrary, capricious, or an abuse of discretion. *Weller v. Ariz. Dep't of Econ. Sec.*, 176 Ariz. 220, 224 (App. 1993). Failure to consider relevant facts is an abuse of discretion. *Rios Moreno v. Ariz. Dep't of Econ. Sec.*, 178 Ariz. 365, 367 (App. 1994). We do not defer to legal conclusions; we independently determine how the law applies to the facts. *Castaneda v. Ariz. Dep't of Econ. Sec.*, 168 Ariz. 491, 494 (App. 1991).

## I.    The Board Erred by Rejecting Dr. Chandler's ASD Diagnosis Based on Arthur's Diagnosis for Schizophrenia.

¶10           Eligibility for DDD benefits is available for persons who meet two criteria: they are residents of Arizona; and they have one of five specified developmental disabilities, as shown by medical and psychological documentation that uses culturally appropriate and valid testing. A.R.S. § 36-559(A); *see* A.R.S. § 36-551(19).[2] A developmental disability is a severe, chronic disability that is "attributable to [one of five conditions]," manifests before the age of 18, is "likely to continue indefinitely," results in "substantial functional limitations" in three or more of seven specified major life activities, and requires lifelong treatment or assistance. A.R.S. § 36-551(19). ASD is one of the specified conditions and is "a condition characterized by severe disorders in communication and behavior resulting in limited ability to communicate, understand, learn and participate in social relationships." *Id.* § 36-551(7). To show that a developmental disability is attributable to ASD, there must be a causal

---

[2]        Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

relationship "between the presence of an impairing condition and the developmental disability." *Id.* § 36-551(6). Importantly, ASD need only be *a* cause of an impairing condition, not the sole cause. *Id.* Thus, an Arizona resident with ASD—by definition a chronic condition—is eligible for DDD benefits if the ASD manifested before 18 and the person needs "extraordinary assistance" due to severe limitations in three or more of the specified activities of daily living. *Id.* § 36-551(43) (substantial functional limitations must require extraordinary assistance).

¶11        Here, the primary dispute is whether Arthur has ASD. DDD denied his application because it concluded he had not shown ASD through an appropriate and valid evaluation. Although she admitted several times she had not diagnosed Arthur as part of her review, Dr. Donohue testified that Arthur did not have ASD. Absent an independent evaluation and diagnosis, that conclusion must be premised exclusively on her opinion Dr. Chandler's evaluation was deficient. Based on Dr. Donohue's testimony, the ALJ concluded Dr. Chandler's evaluation—and by inference, her diagnosis—was not valid. The Board later adopted this conclusion. The question before us is whether Dr. Chandler's evaluation meets the required legal standard. If it does, the Board erred by adopting the ALJ's conclusion, and Dr. Chandler's report should not have been rejected.

¶12        By ADES rule, DDD "shall accept" a diagnosis of ASD by a licensed psychologist who submits "a diagnostic report" that demonstrates the presence of diagnostic criteria established by the American Psychiatric Association, including the symptoms required for a diagnosis of ASD. Arizona Administrative Code ("A.A.C.") § R6-6-303(A)(1).[3] We conclude such a report exists in Dr. Chandler's evaluation as supplemented, which means DDD should have accepted the diagnosis of ASD, as it was the only diagnosis offered by a licensed psychologist who submitted a diagnostic report.

¶13        The Board rejected Dr. Chandler's evaluation because "she failed to make a differential diagnosis." Specifically, the Board stated that according to the DSM-V, when evaluating for ASD, "schizophrenia is a disorder for which a differential diagnosis may be warranted." However, this statement within the DSM-V does not require an express differential diagnosis of schizophrenia for ASD. Thus, it does not permit the DDD to

---

3        The parties agree that the Diagnostic and Statistical Manual, Fifth Edition ("DSM-V"), provides the criteria for an ASD diagnosis.

invalidate an ASD diagnosis based solely on the absence of a differential diagnosis for schizophrenia.

¶14          Moreover, our reading of the record shows Dr. Chandler complied with the DSM-V in rendering her diagnosis. She considered schizophrenia as a condition diagnosed in Arthur by other providers. Dr. Chandler also considered and found each of the five diagnostic criteria for ASD. She and Dr. Donohue also agreed that ASD and schizophrenia could be comorbid conditions.

¶15          In the commentary for ASD in the DSM-V, separate sections discuss differential diagnosis and comorbidity. DSM-V at 57–59. The differential diagnosis section under ASD in the DSM-V lists several other conditions, including schizophrenia, for which differentiation from ASD is appropriate. *Id*. at 57–58. Schizophrenia is contrasted with ASD to help clinicians distinguish the two. *Id*. at 58. In the comorbidity section, clinicians are advised that when criteria for two diagnoses are met, such as ADHD and ASD, both should be given.[4] *Id*. The record shows Dr. Chandler was aware Arthur had been diagnosed with schizophrenia and considered it a comorbid condition when making her conclusions. Her addendum states:

> When differentiating autism spectrum disorder from schizophrenia in adults, experts in the field emphasize the need to consider developmental history, age of onset of certain ASD symptoms like impaired communication and the presence or absence of positive symptoms critical to a diagnosis of schizophrenia (Goldstein & Ozonoff, 2018; Ghazuiddin, 2005; Volkmar, Paul, Klin & Cohen, 2005, Wing, 2005). [A list of references is given below.]

Dr. Chandler then addressed ASD and schizophrenia, noting that if symptoms of both are present, a dual diagnosis is warranted. The DSM-V requires nothing more than this, nor has DDD presented any proposal for methodology to satisfy their professed requirements for a differential diagnosis. Because Dr. Chandler found the five diagnostic criteria for ASD, ASD can be a comorbid condition with schizophrenia, and the DSM-V requires no more, Dr. Chandler was not required to conduct any further differential analysis. This is particularly so, given the complete absence of any affirmative diagnosis to the contrary.

---

4          About 70% of those with ASD have one comorbid mental disorder and 40% may have two or more. DSM-V at 58.

¶16 The Appeals Board characterized the ALJ's rejection of Dr. Chandler's report as giving it "less weight than it might otherwise be given." From this, the Board concluded the ALJ weighed Dr. Chandler's diagnosis and found it was not persuasive. But as we have said, her diagnosis complied with the DSM-V. Thus, there was no basis regarding compliance with the DSM-V to give her report less weight. Said differently, no substantial evidence supports the Board's conclusion in this matter. Therefore, this too was error.

¶17 We hold Dr. Chandler's diagnostic report meets the requirements of the DSM-V. Accordingly, in accordance with A.A.C. R6-6-303(A)(1) and as a matter of law, the Department was required to accept Dr. Chandler's diagnosis of ASD. It was error for the ALJ to find Dr. Chandler's evaluation "not . . . valid" and for the Board to find "no material error" in the ALJ's conclusion. And because the evaluation complied with the DSM-V, giving it less weight for alleged non-compliance was error.

## II. The Record Lacks Sufficient Findings Concerning Manifestations of ASD Before Arthur Reached Adulthood and His Current Functional Limitations.

### A. Manifestations Before Adulthood

¶18 One of the criterion for eligibility for DDD benefits is that "the disability must be apparent and have a substantially limiting effect on a person's functioning before the age of eighteen." A.R.S. § 36-551(33). To show this element, Arthur provided information about his childhood from his mother and siblings, gathered by Dr. Chandler and memorialized in her diagnostic report. He also presented several school records from the 1970s and early 1980s when he attended school. Those records establish he was in special education for "mental impairment" and document behaviors his teachers and school staff observed, behaviors Dr. Chandler characterized as "communication and social challenges," such as isolation from his classmates, failure to participate in activities, being easily distracted, and a need for substantial intervention. Dr. Chandler opined that this history of childhood issues demonstrates a manifestation of ASD before age 18.[5] Concerning this evidence, the ALJ made this finding:

> The [manifestation] evidence presented was that [Arthur] may have had the disability but due to the length of time and

---

[5] Dr. Donohue saw the same information and concluded there were no symptoms of ASD in Arthur before age 18.

potential for misdiagnosis, it is not clear. Although [Arthur]'s experts attempted to single out an instance here or there, the overall picture was not that "apparent" as set forth in this statute and there was little evidence of a substantial limiting effect on [Arthur] prior to age eighteen. . . .

The Board adopted this finding without significant comment.

**¶19**        The ALJ's finding is difficult to understand. The issue is not clarity of the disability in childhood, but manifestation of it. Concluding that "the overall picture was not that 'apparent'" is insufficient. Factual findings must be specific and cannot merely state conclusions. *Douglas Auto & Equip. v. Indus. Comm'n*, 202 Ariz. 345, 347 ¶ 9 (2002). ALJs must "make factual findings that are sufficiently comprehensive and explicit for a reviewing court to glean the basis for the judge's conclusions." *Id*. We will reverse a decision that does not provide us with facts upon which it was based, fails to make basic findings, and simply provides a conclusory statement. *Shelby Sch. v. Ariz. State Bd. of Educ.*, 192 Ariz. 156, 160 ¶ 1 (App. 1998) (reversing where court could not discern basis for decision).

**¶20**        Here, the ALJ did not make express findings on whether Arthur displayed manifestations of ASD before 18. This was error. For example, the ALJ did not explain why being in special education for "mental impairment," isolation from classmates, failure to engage, notable difficulty focusing, and a need for substantial intervention constitutes "little evidence of a substantial limiting effect" on Arthur's functioning. Without further explication by the ALJ or the Board, we cannot determine if this finding is arbitrary, capricious, or an abuse of discretion. *See* A.R.S. § 41-1063 (decisions must contain explicit statement of the underlying facts supporting findings).

**¶21**        Because we find the ALJ's ruling vague, we remand for express findings to determine whether there were manifestations before Arthur turned 18. *See Post v. Indus. Comm'n*, 160 Ariz. 4, 8 (1989) (courts will vacate an ALJ's decision if the factual basis for conclusions is not evident).

### B.      Functional Limitations

**¶22**        Another criterion for eligibility for DDD benefits is that ASD must result in at least three of the following substantial functional limitations: self-care; receptive and expressive language; learning; mobility; self-direction; capacity for independent living; and economic self-sufficiency. A.R.S. § 36-551(19)(d). The limitation must be sufficiently

severe so as to require "extraordinary assistance" for the individual. *Id.* § 36-551(43).

**¶23** DDD did not identify which of the functional limitations it believed were caused solely by schizophrenia and not by ASD. Further, an individual need not prove at least three of the functional limitations were caused exclusively by ASD, but merely that ASD is *a* cause of the limitations. *Id.* § 36-551(19)(d). Indeed, counsel for DDD conceded at argument there is no requirement that an applicant would not have the functional limitations "but for" a sole underlying cause of ASD.

**¶24** Moreover, the ALJ did not make express findings as to whether Arthur had at least three of the substantial functional limitations. We presume she did not do so under the assumption that Dr. Chandler's diagnosis was invalid, and so felt there was no need to determine whether any potential limitations were caused by Arthur's ASD. Addressing this omission, the Board held that it was not error because the ALJ had already determined Arthur failed to prove he had ASD, and it would be "superfluous" to address functional limitations. However, A.R.S. § 23-674(E) provides that findings of fact should address "each contested issue of fact." Indeed, the better practice is for an ALJ to make findings and conclusions on all material issues presented in a given case, whether or not they are contingent on the outcome of other issues. This practice generates a full record for judicial review and can obviate the need for a time-consuming remand. Here, because Arthur may meet the diagnostic requirement and the manifestation requirement, and because there are no findings addressing Arthur's functional limitations, we must remand for express findings on this issue as well.[6]

## III. Lack of Substantial Evidence

### A. Reliability of Psychological Assessments

**¶25** As part of her evaluation, Dr. Chandler administered the Autism Diagnostic Interview-Revised ("ADI-R") and the Vineland Adaptive Behavior Scales: Survey Interview Form, Second Edition

---

[6] As mentioned in Section I, in addition to diagnosis, manifestation, and functional limitations, the other two criteria for eligibility are that the disability is "likely to continue indefinitely" and the person needs lifelong care. A.R.S. § 36-551(19)(c) and (d).

("Vineland") to gather information about Arthur.[7] As described by Dr. Chandler, the ADI-R is a "comprehensive interview developed to assess the presence of [ASD] according to diagnostic criteria set by [the DSM-V]." The Vineland "measures adaptive skills of individuals from early childhood to adulthood." These assessment tools were administered to Roger, Arthur's mother, and two caregivers from the residential placement where Arthur resides. Dr. Chandler explained that the ADI-R is designed to examine communication, social behaviors, and other behaviors aligned with the diagnostic criteria for ASD. The Vineland asks for information from those who know the person about adaptive functioning and intellectual functioning. Dr. Chandler considered Roger a reliable informant. The Vineland was also completed by two caregivers at the residential home who know about Arthur's daily functioning. These assessment tools gathered part of the information Dr. Chandler relied upon for her diagnosis.

¶26            The ALJ, however, found Arthur's brother Roger was not a reliable source of information. After stating Roger "has made critical statements in filings that were not correct" without any further specificity, the ALJ found that Roger "discounts any information that does not support his view." She concluded that "reports from [Roger] must be given little weight as his bias skews his recall." From this finding, we presume the ALJ inferred that the results from the assessments for which Roger was an informant were unreliable, although she does not explicitly make such a finding.

¶27            But we find little support for making the leap from any bias Roger exhibited at the hearing to the ALJ's conclusion that the results of the assessments given by Dr. Chandler are unreliable. First, we agree witnesses who are personally involved in litigation may exhibit bias in the adversarial setting of a hearing. Nevertheless, without other evidence, this does not necessarily establish the same level of bias in other settings. For example, Roger may have given biased information in the Vineland evaluation, but there is no direct—or even indirect—evidence of this in the record. Indeed, Dr. Chandler denied it. Additionally, Roger was not the only reporter for the assessments given by Dr. Chandler, and the ALJ made no findings that the other reporters were biased or not credible. Without more evidence, concluding that the assessments were unreliable solely due to an inferred bias in reporting on Roger's part is too great a leap to be reasonable. Thus, substantial evidence does not support the inference that the results of the

---

[7]            She also conducted the Autism Diagnostic Observation Schedule.

ADI-R and Vineland tools were flawed or unreliable simply because Roger participated in them.[8]

## B. Reliability of Psychiatric Providers Documentation

¶28 Arthur provided medical records from his treating psychiatric team. The first is a December 20, 2020 letter from Nurse Practitioner Egoville stating he had been treating Arthur for schizophrenia for over a year and listing medications he was prescribing. The second is a psychiatric evaluation performed by Egoville in February 2021 in which Arthur is diagnosed with ASD, moderate intellectual disability, and tardive dyskinesia (TD). TD is a side effect from an antipsychotic medication Arthur was taking and involves involuntary movements, shuffling feet, and other behaviors that some might think indicate ASD. Egoville's supervising psychiatrist, Dr. Steven Bupp, added a note at the end of the evaluation stating he reviewed the records and agreed with the evaluation results. Both testified at the hearing to support the psychiatric evaluation.

¶29 The ALJ found she could "not give great weight" to the evaluation because Dr. Bupp testified that not all the information relied on to make the diagnosis change was noted in the written psychiatric evaluation. However, both Egoville and Dr. Bupp testified about the foundation of their conclusions, highlighting that they relied on their experience with Arthur during the two years they have been treating him. Considering this testimony, the ALJ's reason for giving the evaluation less weight is not supported by the record and is arbitrary.

## CONCLUSION

¶30 We vacate the Board's ruling and remand for further proceedings consistent with this decision.

¶31 As the prevailing party on appeal, we award Arthur his taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. We also award him his reasonable attorney's fees on appeal only, pursuant to A.R.S. §§ 12-348, 41-1007, and Ariz. R. Civ. App. P. 21. We decline to rule regarding costs and attorney's fees incurred in the

---

[8] The Board ruled any error here was "immaterial" because "The Vineland evaluation is a tool for measuring functional limitations" and the ALJ "did not analyze . . . functional limitations." As we have noted, the Vineland was not the only assessment Roger participated in.

administrative proceedings, but remand for their determination following the proceedings.

